**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Plaintiffs,**

**v.**

**DOUBLE POWER TECHNOLOGY, INC., ZOWEE MARKETING CO., LTD., SHENZEN ZOWEE TECHNOLOGY CO., LTD.**

**Defendants.**

Case No.: 15-1130-GMS

JURY TRIAL DEMANDED

**MICROSOFT CORPORATION,**

**Intervenor-Plaintiff,**

**v.**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants.**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants/Counterclaim Plaintiffs in Intervention,**

**v.**

**MICROSOFT CORPORATION**

**Intervenor-Plaintiff/Counterclaim Defendant in Intervention,**

**AND**

**MICROSOFT MOBILE OY**

**Counterclaim Defendant in Intervention.**

**PLAINTIFFS KONINKLIJKE PHILIPS N.V. AND U.S. PHILIPS CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Plaintiffs and Intervenor-Defendants Koninklijke Philips N.V. and U.S. Philips Corporation (collectively, "Plaintiffs" or "Philips"), hereby respond to the Complaint in Intervention ("Complaint") filed by Intervenor-Plaintiff Microsoft Corporation ("Microsoft"), with the following Answer, Affirmative Defenses, and Counterclaims.

## GENERAL DENIAL

Unless specifically admitted below, Philips denies each and every allegation in the Complaint in Intervention. To the extent the headings of the Complaint are construed as allegations, they are each denied.

## RESPONSE TO SPECIFIC ALLEGATIONS

Philips hereby answers the numbered paragraphs of the Complaint in Intervention with the following correspondingly numbered responses:

1. Philips admits that Microsoft is seeking a declaratory judgment of non-infringement, but denies that such action is meritorious.

## PARTIES

2. Philips admits the allegations of Paragraph 2, based on information and belief that Microsoft has described itself accurately.

3. Philips admits the allegations of Paragraph 3.

4. Philips admits the allegations of Paragraph 4.

## JURISDICTION AND VENUE

5. Philips admits the allegations of Paragraph 5.

6. Philips admits the allegations of Paragraph 6.

7. Philips admits the allegations of Paragraph 7.

## FACTUAL BACKGROUND AND MICROSOFT'S INTEREST IN THIS ACTION

8. Philips admits that Philips filed its original Complaint in this action on December 7, 2015, accusing Double Power Technology, Inc., Zowee Marketing Co., Ltd., and Shenzen Zowee Technology Co., Ltd. (collectively, "Double Power") of directly infringing, indirectly infringing, contributorily infringing, and inducing others to infringe certain claims of United States Patent Nos. RE 44,913 ("the '913 patent"), 6,690,387 ("the '387 patent"), 7,184,064 ("the '064 patent"), 7,529,806 ("the '806 patent"), 5,910,797 ("the '797 patent"), 6,522,695 ("the '695 patent"), 6,772,114 ("the '114 patent"), and RE 43,564 ("the '564 patent"). Philips asserted US Patent No. RE 44,006 ("the '006 patent") against Double Power in its First Amended Complaint, filed in this action on April 11, 2016.[1] Philips denies the remaining allegations of Paragraph 8.

9. Philips admits the allegations of Paragraph 9, based on information and belief that

[1] The '913 patent, '387 patent, '064 patent, '806 patent, '797 patent, '695 patent, '006 patent, '114 patent, and '564 patent shall collectively be referred to as the "Asserted Patents."

Microsoft has described its business relationship with Double Power accurately.

10. Philips admits the allegations of Paragraph 10, but denies that Microsoft's citation to paragraph 99 of the First Amended Complaint is correct.

11. Philips admits the allegations of Paragraph 11.

12. Philips denies the allegation within Paragraph 12 that its Initial Infringement Contentions Against the Double Power Defendants cite to Windows 10 online documents that refer to touch keyboards to support the allegations of functionality for the '913 Windows Accused Products. Philips admits the remaining allegations of Paragraph 12.

13. Philips admits the allegations of Paragraph 13.

14. Philips admits the allegations of Paragraph 14.

15. Philips admits the allegations of Paragraph 15.

16. Philips admits the allegations of Paragraph 16. Philips also relies upon Microsoft Windows 8.1 and Microsoft Windows 10 support documents to support its allegations of functionality for the '564 Windows Accused Products.

17. Philips admits the allegations of Paragraph 17.

18. Philips admits the allegations of Paragraph 18.

19. Philips admits the allegations of Paragraph 19.

20. Philips admits the allegation within Paragraph 20 that Microsoft has an objectively reasonable apprehension that Philips will claim that Microsoft's products, including at least the Windows Operating System, directly or indirectly infringe one or more claims of the Asserted Patents. Philips admits the allegation with Paragraph 20 that an actual controversy exists between Microsoft and Philips. The remainder of Paragraph 20 contain statements to which no response is required.

**COUNT 1**

**(Declaratory Judgment of Noninfringement of U.S. Patent No. RE 44,913)**

21. Philips repeats and incorporates by reference the entirety of its responses to Paragraphs 1-20 as if fully set forth herein.

22. Philips admits the allegations of Paragraph 22.

23. Philips denies the allegations of Paragraph 23.

24. Philips admits the allegation within Paragraph 24 that a judicial declaration concerning these matters is necessary and warranted, but denies any allegation that Microsoft is entitled to a declaratory judgment of noninfringement. Philips denies all remaining allegations of Paragraph 24.

**COUNT 2**

**(Declaratory Judgment of Noninfringement of U.S. Patent No. 6,690,387)**

25. Philips repeats and incorporates by reference the entirety of its responses to Paragraphs 1-24 as if fully set forth herein.

26. Philips admits the allegations of Paragraph 26.

27. Philips denies the allegations of Paragraph 27.

28. Philips admits the allegation within Paragraph 28 that a judicial declaration concerning these matters is necessary and warranted, but denies any allegation that Microsoft is entitled to a declaratory judgment of noninfringement. Philips denies all remaining allegations of Paragraph 28.

**COUNT 3**

**(Declaratory Judgment of Noninfringement of U.S. Patent No. 7,184,064)**

29. Philips repeats and incorporates by reference the entirety of its responses to Paragraphs 1-28 as if fully set forth herein.

30. Philips admits the allegations of Paragraph 30.

31. Philips denies the allegations of Paragraph 31.

32. Philips admits the allegation within Paragraph 32 that a judicial declaration concerning these matters is necessary and warranted, but denies any allegation that Microsoft is entitled to a declaratory judgment of noninfringement. Philips denies all remaining allegations of Paragraph 32.

**COUNT 4**

**(Declaratory Judgment of Noninfringement of U.S. Patent No. 6,522,695)**

33. Philips repeats and incorporates by reference the entirety of its responses to Paragraphs 1-32 as if fully set forth herein.

34. Philips admits the allegations of Paragraph 34.

35. Philips denies the allegations of Paragraph 35.

36. Philips admits the allegation within Paragraph 36 that a judicial declaration concerning these matters is necessary and warranted, but denies any allegation that Microsoft is entitled to a declaratory judgment of noninfringement. Philips denies all remaining allegations of Paragraph 36.

**COUNT 5**

**(Declaratory Judgment of Noninfringement of U.S. Patent No. RE 43,564)**

37. Philips repeats and incorporates by reference the entirety of its responses to Paragraphs 1-36 as if fully set forth herein.

38. Philips admits the allegations of Paragraph 38.

39. Philips denies the allegations of Paragraph 39.

40. Philips admits the allegation within Paragraph 40 that a judicial declaration concerning these matters is necessary and warranted, but denies any allegation that Microsoft is entitled to a declaratory judgment of noninfringement. Philips denies all remaining allegations of Paragraph 40.

**REQUESTED RELIEF**

Philips denies Microsoft's allegation that it is entitled to or should be granted any relief in this matter, including the relief that Microsoft requests in lettered paragraphs A-G.

**DEMAND FOR JURY TRIAL**

Philips admits that Microsoft demands trial by jury on all issues so triable.

**AFFIRMATIVE DEFENSES**

1. Microsoft's Complaint fails to state a claim upon which relief may be granted, as Microsoft has failed to plead sufficient factual allegations in support of its claims.

2. Microsoft directly and indirectly infringes the claims of the '913 patent, '387 patent, '064 patent, '695 patent, and '564 patent. Microsoft has alleged no facts that would

support a finding of non-infringement of any claim of these patents.

3. Microsoft cannot prove this is an exceptional case under 35 U.S.C. § 285, and has alleged no facts to support such a claim. Philips has engaged in all relevant activities, at all relevant times, in good faith.

4. Philips reserves the right to assert all affirmative and other defenses under Rule 8(c) of the Federal Rules of Civil Procedure and any other defenses, at law or equity, that may now or in the future be available based on discovery, any other factual investigation, or any other development relating to this case or any other action.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Philips asserts this Counterclaim for patent infringement against Microsoft Corporation and Microsoft Mobile Oy (collectively, "Counterclaim Defendant"), and hereby alleges as follows:

### Nature of the Action

1. This counterclaim by Philips is for patent infringement under 35 U.S.C. § 271, et seq., against Counterclaim Defendant for infringement of United States Patent Nos. RE 44,913 ("the '913 patent"), 6,690,387 ("the '387 patent"), 7,184,064 ("the '064 patent"), 7,529,806 ("the '806 patent"), 5,910,797 ("the '797 patent"), 6,522,695 ("the '695 patent"), 8,543,819 ("the '819 patent"), 9,436,809 ("the '809 patent"), and RE 43,564 ("the '564 patent") (collectively, the "patents-in-suit").

### The Parties

2. Counterclaim Plaintiff Koninklijke Philips N.V., formerly known as Koninklijke Philips Electronics N.V., is a corporation duly organized and existing under the laws of the

Netherlands. Its principal place of business is High Tech Campus 5, 5656 AE Eindhoven, the Netherlands.

3. Counterclaim Plaintiff U.S. Philips Corporation is a corporation duly organized and existing under the laws of Delaware. Its principal place of business is 3000 Minuteman Road, Andover, Massachusetts, 01810.

4. Upon information and belief, Microsoft Corporation is a corporation organized and existing under the laws of the State of Washington, with its principal place of business located at One Microsoft Way, Redmond, Washington 98052. Upon information and belief, Microsoft Mobile Oy is a corporation organized and existing under the laws of Finland, with its principal place of business located at Keilalahdentie 2-4, FIN-02150 Espoo, Finland. Upon information and belief, Microsoft Mobile Oy is a subsidiary of Microsoft Corporation.

5. Upon information and belief Microsoft Mobile Oy designs, makes, uses, sells, and offers for sale the devices accused of infringing herein. Upon information and belief, Microsoft Corporation also designs, makes, uses, sells, and offers for sale the devices accused of infringing herein. Upon information and belief, despite the existence of separate corporate entities, Microsoft Mobile Oy and Microsoft Corporation have acted as a single business unit since at least April 2014 with regard to the accused devices. Indeed, Microsoft Corporation's Form 10-K for the fiscal year ending June 30, 2016, states "We design, manufacture, and sell devices such as Surface, phones, and other intelligent devices…We began manufacturing and selling Microsoft Lumia ("Lumia") phones and other phones with the acquisition of [Nokia] in April 2014."

**Jurisdiction and Venue**

6. These counterclaims for patent infringement arise under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction

pursuant to 28 U.S.C. §§ 1331 and 1338.

7. This Court has personal jurisdiction over Counterclaim Defendant because Counterclaim Defendant has, directly or through intermediaries, committed acts within Delaware giving rise to this action and/or has established minimum contacts with Delaware such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Counterclaim Defendant has placed, and is continuing to place, products which infringe one or more of the patents-in-suit into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in the State of Delaware, including in this District. Upon information and belief, Counterclaim Defendant has derived substantial revenues from its infringing acts occurring within the State of Delaware and within this District.

8. Upon information and belief, Counterclaim Defendant is, and has been, engaged in the business of making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States smartphones, tablet computers, laptops, studios, hubs, video game consoles, content protection technologies, browsers, music applications, and operating systems that include hardware and/or software containing functionality covered by one or more claims of the patents-in-suit.

9. Non-limiting examples of these smartphones, tablet computers, laptops, studios, hubs, video game consoles, content protection technologies, browsers, music applications, and operating systems are the Windows 7, Windows 8, Windows 8.1, Windows 10, Windows RT 8.0, Windows RT 8.1, Windows Phone 8.1, Windows 10 Mobile, Microsoft Edge Browser, Microsoft Groove Music application, Microsoft Surface, Microsoft Surface Pro, Microsoft Surface 2, Microsoft Surface Pro 2, Microsoft Surface Pro 3, Microsoft Surface 3, Microsoft

Surface Hub, Microsoft Surface Pro 4, Microsoft Surface Book, Microsoft Surface Studio, Nokia Lumia 930, Nokia Lumia 635, Nokia Lumia 530, Nokia Lumia 735, Nokia Lumia 830, Microsoft Lumia 435, Microsoft Lumia 640, Microsoft Lumia 640 XL, Microsoft Lumia 950, Microsoft Lumia 950 XL, Microsoft Lumia 550, Microsoft Lumia 650, Xbox One, Xbox One S, Xbox 360, Xbox 360 S, Xbox 360 E, Microsoft PlayReady, and Microsoft Windows Media Digital Rights Management which, on information and belief, have been used, offered for sale, and/or sold within this judicial District, without limitation, through https://www.microsoftstore.com/store/msusa/en_US/home, and the websites and retail locations of third parties.

10. Upon information and belief, Counterclaim Defendant purposefully directs sales and offers for sale of these smartphones, tablet computers, laptops, studios, hubs, video game consoles, content protection technologies, browsers, music applications, and operating systems, including but not limited to those specifically identified above, toward the state of Delaware, including this District.

11. Upon information and belief, Counterclaim Defendant maintains established distribution channels within the United States that permit Counterclaim Defendant to ship these smartphones, tablet computers, laptops, studios, hubs, video game consoles, content protection technologies, browsers, music applications, and operating systems, including but not limited to those specifically identified above, to the state of Delaware, including this District, within a few days.

12. In addition, Counterclaim Defendant has actively induced and continues to actively induce infringement of one or more of the patents-in-suit within this District. Counterclaim Defendant has acted with the specific intent to induce infringement as, with

knowledge of the patents-in-suit and knowledge that its products include functionality which, when incorporated into devices and/or used by others, directly infringes one or more of the patents-in-suit, Counterclaim Defendant has offered for sale and/or sold within this District, to others, including third party manufacturers, customers, and other end users, products containing infringing functionality. Counterclaim Defendant has further provided instructions, user manuals, advertising, and/or marketing materials which encourage third party manufacturers to incorporate the infringing functionality into their devices, and encourage end users to use the infringing functionality, and which thereby encourage direct infringement one or more of the patents-in-suit.

13. In addition, Counterclaim Defendant has contributorily infringed and continues to contributorily infringe one or more of the patents-in-suit within this District. Counterclaim Defendant has, with knowledge of the patents-in-suit and knowledge that its products contain functionality which, when incorporated into devices and/or used by others, directly infringes one or more of the patents-in-suit, offered to sell, sold or imported into this District products including infringing functionality to others, including third party manufacturers, customers, and other end users, who use the included infringing functionality to directly infringe at least one of the patents-in-suit. Counterclaim Defendant's products thus constitute a material part of the claimed invention of one or more of the patents-in-suit and Counterclaim Defendant knows that these products are especially made and/or especially adapted for use in infringing at least one of the patents-in-suit and are not staple articles of commerce suitable for substantial non-infringing use.

14. Venue is proper under 28 U.S.C. §§ 1391(b) and (c), and 1400.

**Philips' Patents-in-Suit**

15. On May 27, 2014, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. RE 44,913, entitled "Text entry method and device therefor," to inventor Matthew J. Bickerton. Koninklijke Philips N.V. is the assignee and owner of the '913 patent, a true copy of which is attached hereto as Exhibit 1.

16. On February 10, 2004, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 6,690,387, entitled "Touch-screen image scrolling system and method," to inventors John Zimmerman and Jacquelyn Annette Martino. Koninklijke Philips N.V. is the assignee and owner of the '387 patent, a true copy of which is attached hereto as Exhibit 2.

17. On February 27, 2007, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 7,184,064, entitled "Touch-screen image scrolling system and method," to inventors John Zimmerman and Jacquelyn Annette Martino. Koninklijke Philips N.V. is the assignee and owner of the '064 patent, a true copy of which is attached hereto as Exhibit 3.

18. On May 5, 2009, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 7,529,806, entitled "Partitioning of MP3 content file for emulating streaming," to inventor Yevgeniy Eugene Shteyn. Koninklijke Philips N.V. is the assignee and owner of the '806 patent, a true copy of which is attached hereto as Exhibit 4.

19. On June 8, 1999, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 5,910,797, entitled "Portable data processing apparatus provided with a screen and a gravitation-controlled sensor for screen orientation," to inventor Leonardus G.M. Beuk. U.S. Philips Corporation is the assignee and owner of the '797 patent, a true copy of

which is attached hereto as Exhibit 5.

20. On February 18, 2003, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 6,522,695, entitled "Transmitting device for transmitting a digital information signal alternately in encoded form and non-encoded form," to inventors Alphons A.M.L. Bruekers, Johannes M.M. Verbakel, and Marcel S.E. Van Nieuwenhoven. Koninklijke Philips N.V. is the assignee and owner of the '695 patent, a true copy of which is attached hereto as Exhibit 6.

21. On September 24, 2013, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 8,543,819, entitled "Secure authenticated distance measurement," to inventor Franciscus Lucas Antonius Johannes Kamperman. Koninklijke Philips N.V. is the assignee and owner of the '819 patent, a true copy of which is attached hereto as Exhibit 7.

22. On September 6, 2016, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 9,436,809, entitled "Secure authenticated distance measurement," to inventor Franciscus Lucas Antonius Johannes Kamperman. Koninklijke Philips N.V. is the assignee and owner of the '809 patent, a true copy of which is attached hereto as Exhibit 8.

23. On August 7, 2012, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. RE 43,564, entitled "Hand-held with auto-zoom for graphical display of web page," to inventor Jan Van Ee. Koninklijke Philips N.V. is the assignee and owner of the '564 patent, a true copy of which is attached hereto as Exhibit 9.

**Factual Background**

24. Philips is a world-renowned company that expends enormous efforts and

resources to advance research and development in various technological fields. One of those fields is applied electronics, in which Philips has conducted groundbreaking research relating to graphical user interfaces, electronic displays of information, touch screen interfaces, the control of content delivery between multiple devices, and audio/video encoding and decoding, among other things. The patents-in-suit stem from this work and claim protection for interactive systems for which users can control apparatuses, displays, and content in an intuitive manner. These intuitive mechanisms are used in present-day smartphones and tablet computers and other electronic devices.

**Notice to Counterclaim Defendant**

25. Upon information and belief, Counterclaim Defendant is well-aware of Plaintiffs' Touch-Enabled Devices patent portfolio (see, e.g., http://www.ip.philips.com/licensing/program/111/touch-enabled-devices) relating to Counterclaim Defendant's smartphones, tablet computers, laptops, studios, hubs, video game consoles, content protection technologies, browsers, music applications, and operating systems. Plaintiffs' patent portfolio in this area has been the subject of extensive discussion between the parties.

26. Upon information and belief, Counterclaim Defendant has had knowledge of the '913 patent in advance of the filing of this Counterclaim. Counterclaim Defendant was given notice of its infringement of the '913 patent at least upon receiving a letter from Philips dated February 13, 2015, and through other communications, meetings, and presentations. Upon information and belief, Counterclaim Defendant had become further aware of Philips' infringement allegations for the '913 patent at least as of October 7, 2016, when Counterclaim Defendant contacted Philips' counsel regarding intervention. At the very latest, Counterclaim

Defendant was given notice of its infringement of the ’913 patent upon the service of Plaintiffs’ Initial Identification of Proposed Intervenor Microsoft’s Accused Products, on November 7, 2016.

27. Upon information and belief, Counterclaim Defendant has had knowledge of the ’387 patent in advance of the filing of this Counterclaim. Counterclaim Defendant was given notice of its infringement of the ’387 patent at least upon receiving a letter from Philips dated February 13, 2015, and through other communications, meetings, and presentations. Upon information and belief, Counterclaim Defendant had become further aware of Philips’ infringement allegations for the ’387 patent at least as of October 7, 2016, when Counterclaim Defendant contacted Philips’ counsel regarding intervention. At the very latest, Counterclaim Defendant was given notice of its infringement of the ’387 patent upon the service of Plaintiffs’ Initial Identification of Proposed Intervenor Microsoft’s Accused Products, on November 7, 2016.

28. Upon information and belief, Counterclaim Defendant has had knowledge of the ’064 patent in advance of the filing of this Counterclaim. Counterclaim Defendant was given notice of its infringement of the ’064 patent at least upon receiving a letter from Philips dated February 13, 2015, and through other communications, meetings, and presentations. Upon information and belief, Counterclaim Defendant had become further aware of Philips’ infringement allegations for the ’064 patent at least as of October 7, 2016, when Counterclaim Defendant contacted Philips’ counsel regarding intervention. At the very latest, Counterclaim Defendant was given notice of its infringement of the ’064 patent upon the service of Plaintiffs’ Initial Identification of Proposed Intervenor Microsoft’s Accused Products, on November 7, 2016.

29. Upon information and belief, Counterclaim Defendant has had knowledge of the ’806 patent in advance of the filing of this Counterclaim. Counterclaim Defendant was given notice of its infringement of the ’806 patent at least upon viewing a presentation made by Philips on October 13, 2015, and through other communications, meetings, and presentations. Upon information and belief, Counterclaim Defendant had become further aware of Philips’ infringement allegations for the ’806 patent at least as of October 7, 2016, when Counterclaim Defendant contacted Philips’ counsel regarding intervention. At the very latest, Counterclaim Defendant was given notice of its infringement of the ’806 patent upon the service of Plaintiffs’ Initial Identification of Proposed Intervenor Microsoft’s Accused Products, on November 7, 2016.

30. Upon information and belief, Counterclaim Defendant has had knowledge of the ’797 patent in advance of the filing of this Counterclaim. Counterclaim Defendant was given notice of its infringement of the ’797 patent at least upon receiving a letter from Philips dated February 13, 2015, and through other communications, meetings, and presentations. Upon information and belief, Counterclaim Defendant had become further aware of Philips’ infringement allegations for the ’797 patent at least as of October 7, 2016, when Counterclaim Defendant contacted Philips’ counsel regarding intervention. At the very latest, Counterclaim Defendant was given notice of its infringement of the ’797 patent upon the service of Plaintiffs’ Initial Identification of Proposed Intervenor Microsoft’s Accused Products, on November 7, 2016.

31. Upon information and belief, Counterclaim Defendant has had knowledge of the ’695 patent in advance of the filing of this Counterclaim. Counterclaim Defendant was given notice of its infringement of the ’695 patent at least upon receiving a letter from Philips dated

February 13, 2015, and through other communications, meetings, and presentations. Upon information and belief, Counterclaim Defendant had become further aware of Philips' infringement allegations for the '695 patent at least as of October 7, 2016, when Counterclaim Defendant contacted Philips' counsel regarding intervention. At the very latest, Counterclaim Defendant was given notice of its infringement of the '695 patent upon the service of Plaintiffs' Initial Identification of Proposed Intervenor Microsoft's Accused Products, on November 7, 2016.

32. Upon information and belief, Counterclaim Defendant has had knowledge of the '819 patent in advance of the filing of this Counterclaim. Counterclaim Defendant was given notice of its infringement of the '819 patent at least upon receiving a letter from Philips dated February 13, 2015, upon viewing a presentation made by Philips on October 13, 2015, and through other communications, meetings, and presentations. Upon information and belief, Counterclaim Defendant had become further aware of Philips' infringement allegations for the '819 patent at least as of October 7, 2016, when Counterclaim Defendant contacted Philips' counsel regarding intervention. At the very latest, Counterclaim Defendant was given notice of its infringement of the '819 patent upon the service of Plaintiffs' Initial Identification of Proposed Intervenor Microsoft's Accused Products, on November 7, 2016.

33. Upon information and belief, Counterclaim Defendant has had knowledge of the '809 patent in advance of the filing of this Counterclaim. At the very latest, Counterclaim Defendant was given notice of its infringement of the '809 patent upon the service of Plaintiffs' Initial Identification of Proposed Intervenor Microsoft's Accused Products, on November 7, 2016.

34. Upon information and belief, Counterclaim Defendant has had knowledge of the

’564 patent in advance of the filing of this Counterclaim. Counterclaim Defendant was given notice of its infringement of the ’564 patent at least upon receiving a letter from Philips dated February 13, 2015, and through other communications, meetings, and presentations. Upon information and belief, Counterclaim Defendant had become further aware of Philips’ infringement allegations for the ’564 patent at least as of October 7, 2016, when Counterclaim Defendant contacted Philips’ counsel regarding intervention. At the very latest, Counterclaim Defendant was given notice of its infringement of the ’564 patent upon the service of Plaintiffs’ Initial Identification of Proposed Intervenor Microsoft’s Accused Products, on November 7, 2016.

**First Cause of Action: Infringement of U.S. Patent No. RE 44,913**

35. Philips repeats and incorporates by reference each and every allegation of paragraphs 1 through 34 of this Counterclaim, as though set forth here in its entirety.

36. Koninklijke Philips N.V. is the sole owner of the entire right, title, and interest in and to the ’913 patent, including the right to sue and recover for any and all infringements thereof.

37. Claim 1 of the ’913 patent is illustrative of the method claims of the ’913 patent and is directed toward a method for inputting a character to a device including a keypad, which includes a plurality of keys. At least one of the keys has a primary character, a plurality of secondary characters, and an associated display area. In a default state, the keypad displays the primary character associated with the at least one key in the associated display area. In the default state, the primary character is returned as an input character in response to selection of the at least one key for a period shorter than a predetermined time period. A second state is switched to after a first key selection of the at least one key is detected for a period longer than

the predetermined time period. In the second state, each of the secondary characters associated with the first selected key is displayed in a respective display area, a second key selection is detected, the secondary character associated with the second key selection is selected for the input character, and the keypad is returned to the default state.

38. Claim 4 of the '913 patent is illustrative of the device claims of the '913 patent and is directed toward a device for receiving character input having a keypad having a plurality of keys. At least one of the keys has a primary character, a plurality of secondary characters, and an associated display area. The device has means for displaying, in a default state, the primary character associated with the at least one key in the associated display area. The device has means for returning, in a default state, the primary character as an input character in response to selection of the at least one key for a period shorter than a predetermined time period and means for switching to a second state responsive to a first key selection of the at least one key for a period longer than the predetermined time period. The device has means for displaying, in the second state, each of the secondary characters associated with the selected key in a respective display area, means responsive to a second key selection for selecting as the input character the secondary character associated with the second key selection, and means for returning the keypad to the default state.

39. Counterclaim Defendant has directly infringed and continues to directly infringe the '913 patent in violation of 35 U.S.C. § 271(a) by using in the United States, without authority, smartphones, tablet computers, laptops, studios, hubs, and operating systems to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the '913 patent.

40. Counterclaim Defendant has directly infringed and continues to directly infringe

the ’913 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, without authority, smartphones, tablet computers, laptops, studios, and hubs that embody, either literally or under the doctrine of equivalents, each element of at least claim 4 of the ’913 patent.

41. For example, the Microsoft Surface Pro 4 is a tablet which runs the Windows 10 operating system, and the Microsoft Lumia 650 is a smartphone which runs the Windows 10 Mobile operating system. Both of these devices have keypad entry functionality similar to that summarized in the next paragraph (“the ’913 Accused Keypad Entry Functionality”) that meets every element of at least claim 4 of the ’913 patent, either literally or under the doctrine of equivalents, and the use of which results in the practice of every step of at least claim 1 of the ’913 patent, either literally or under the doctrine of equivalents, when operated by Counterclaim Defendant or other end users.

42. The Microsoft Surface Pro 4, which runs the Windows 10 operating system (see, e.g., https://www.microsoft.com/en-us/surface/devices/surface-pro-4/tech-specs), and the Microsoft Lumia 650, which runs the Windows 10 Mobile operating system (see, e.g., http://www.windowscentral.com/lumia-650), both have a keypad having a plurality of keys. At least one key (e.g., the “a” key) has a primary character (e.g., the “a” character), a plurality of secondary characters (e.g., characters such as “à” and “á”), and an associated display area (e.g., a portion of the screen associated with the “a” key). In a default state, the keypad displays the primary character associated with the at least one key in the associated display area (e.g., the “a” character is displayed in the portion of the screen associated with the “a” key). In the default state, the primary character is returned as an input character (e.g., the “a” character is returned as the input character) in response to selection of the at least one key for a period shorter than a

predetermined time period (e.g., the "a" key is pressed and not held). A second state is switched to after a first key selection of the at least one key is detected for a period longer than the predetermined time period (e.g., the "a" key is pressed and held). In the second state, each of the secondary characters associated with the first selected key is displayed in a respective display area (e.g., each of the characters such as "à" and "á" that are associated with the selected key, the "a" key, is displayed in a respective portion of the screen), a second key selection is detected (e.g., the selection of the key associated with the "á" character is detected), the secondary character associated with the second key selection is selected for the input character (e.g., the "á" character is selected as the input character), and the keypad is returned to the default state (e.g., the keypad returns to display of the "a" character).

43. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States operating systems that include software code designed to practice the above-referenced '913 Accused Keypad Entry Functionality, including, without limitation, the Windows 8, Windows 8.1, Windows 10, Windows RT 8.0, Windows RT 8.1, Windows Phone 8.1, and Windows 10 Mobile operating systems ("the '913 Accused Operating Systems"), and/or software updates that include the '913 Accused Keypad Entry Functionality. *See*, *e.g.*, https://blogs.msdn.microsoft.com/b8/2012/07/17/designing-the-windows-8-touch-keyboard/.

44. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States smartphones, tablet computers, laptops, studios, and hubs that include the above-referenced '913 Accused Keypad Entry Functionality (e.g., by being pre-loaded with one of the '913 Accused Operating Systems) including, without limitation, the Microsoft Surface, Microsoft Surface Pro,

Microsoft Surface 2, Microsoft Surface Pro 2, Microsoft Surface Pro 3, Microsoft Surface 3, Microsoft Surface Hub, Microsoft Surface Pro 4, Microsoft Surface Book, Microsoft Surface Studio, Nokia Lumia 930, Nokia Lumia 635, Nokia Lumia 530, Nokia Lumia 735, Nokia Lumia 830, Microsoft Lumia 435, Microsoft Lumia 640, Microsoft Lumia 640 XL, Microsoft Lumia 950, Microsoft Lumia 950 XL, Microsoft Lumia 550, and Microsoft Lumia 650 ("the '913 Accused Keypad Entry Devices").

45. Counterclaim Defendant has also actively induced, and continues to actively induce infringement of the '913 patent in violation of 35 U.S.C. § 271(b). Upon information and belief, third party manufacturers (e.g. Acer Inc. and Acer America Corp. (collectively, "Acer"); ASUSTeK Computer Inc. and ASUS Computer International (collectively, "ASUS"); Double Power Technology, Inc., Zowee Marketing Co., Ltd., and Shenzen Zowee Technology Co., Ltd. (collectively, "Double Power"); Visual Land, Inc. ("Visual Land"); YiFang USA, Inc. d/b/a E-Fun, Inc. ("YiFang"); etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 4 of the '913 patent, by including one of the '913 Accused Operating Systems, and therefore including the '913 Accused Keypad Entry Functionality. Thereby, the third party manufacturers directly infringe at least claim 4 of the '913 patent.

46. Counterclaim Defendant has had knowledge of the '913 patent since at least February 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that making, having made, using, selling and/or

offering to sell within the United States, and/or importing into the United States, devices which include the ’913 Accused Keypad Entry Functionality directly infringes the ’913 patent, by being given actual notice of the patent on February 13, 2015, and through other communications, meetings, and presentations relating to infringement of the ’913 patent. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce infringement as, with knowledge of the ’913 patent and knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’913 Accused Keypad Entry Functionality directly infringes the ’913 patent, Counterclaim Defendant has offered for sale, sold, and/or imported to others, including third party manufacturers, the ’913 Accused Operating Systems, which Counterclaim Defendant knows to include software code designed to practice the ’913 Accused Keypad Entry Functionality when executed. Counterclaim Defendant has further provided to those third party manufacturers instructions, user manuals, advertising, and/or marketing materials encouraging them and directing them how to incorporate the ’913 Accused Operating Systems into the devices they make, have made, use, sell, and/or offer to sell within the United States, and/or import into the United States, and directly infringe the ’913 patent.

47. For example, the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 each come pre-installed with the Windows 10 operating system, and therefore come pre-installed with software code which practices the ’913 Accused Keypad Entry Functionality when executed. Upon information and belief, Counterclaim Defendant provides third party manufacturers Acer, ASUS, Double Power, Visual Land, and YiFang with instructions and/or user manuals which

facilitate and direct these third party manufacturers how to incorporate the Windows 10 operating system into the above-listed devices that each company makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States. Thereby, Counterclaim Defendant facilitates, directs, or encourages Acer, ASUS, Double Power, Visual Land, and YiFang to directly infringe at least claim 4 of the ’913 patent.

48. Counterclaim Defendant has also actively induced, and continues to actively induce, its customers and other end users to infringe the ’913 patent in violation of 35 U.S.C. § 271(b) in connection with their use of the ’913 Accused Keypad Entry Devices and/or third party manufacturers’ devices which include the ’913 Accused Operating Systems. Upon information and belief, Counterclaim Defendant’s customers and other end users actually use the ’913 Accused Keypad Entry Functionality in the ’913 Accused Keypad Entry Devices and/or third party manufacturers’ devices which include the ’913 Accused Operating Systems to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the ’913 patent and thereby directly infringe.

49. Counterclaim Defendant has had knowledge of the ’913 patent since at least February 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that use of the ’913 Accused Keypad Entry Functionality directly infringes the ’913 patent by being given actual notice of the patent on February 13, 2015, and through other communications, meetings, and presentations made by Philips relating to infringement of the ’913 patent. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce its customers and other end users to infringe the ’913 patent via use of the ’913 Accused Keypad Entry Devices and/or third party manufacturer devices (e.g. Acer Aspire Switch 10E,

ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.). With knowledge of the ’913 patent and knowledge that use of the ’913 Accused Keypad Entry Functionality directly infringes the ’913 patent, Counterclaim Defendant has: (i) offered for sale and/or sold to others, including customers and other end users, the ’913 Accused Keypad Entry Devices that include the ’913 Accused Keypad Entry Functionality (e.g., by being pre-loaded with one of the ’913 Accused Operating Systems), (ii) offered for sale, sold and/or imported to third party manufacturers for incorporation into their devices, the ’913 Accused Operating Systems, which includes software code designed to practice the ’913 Accused Keypad Entry Functionality when executed, and/or (iii) has offered software updates for the ’913 Accused Keypad Entry Devices and third party devices that include the ’913 Accused Keypad Entry Functionality, and has provided to others instructions, user manuals, advertising, and/or marketing materials encouraging them to use the ’913 Accused Keypad Entry Functionality and directly infringe the ’913 patent.

50. As one example, Counterclaim Defendant provides a developers’ blog (see, e.g., https://blogs.msdn.microsoft.com/b8/2012/07/17/designing-the-windows-8-touch-keyboard/) which facilitates, directs, or encourages others, including customers and other end users, to use the ’913 Accused Keypad Entry Functionality and thereby directly infringe at least the method of claim 1 of the ’913 patent. For example, the developers’ blog includes at least the following description and instructions that direct a user to practice the ’913 Accused Keypad Entry Functionality: “On our touch keyboard when you press and hold, we show alternate characters or symbols. . . . Practically no one has complained about this departure from convention. We built on it, in fact.” Counterclaim Defendant has knowledge that the instructions in this developers’ blog encourage and facilitate the direct infringement of the ’913 patent by others, including

customers and other end users, as Counterclaim Defendant has had knowledge of the ’913 patent and that use of the ’913 Accused Keypad Entry Functionality directly infringes the ’913 patent since at least February 13, 2015, as explained above.

51. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’913 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’913 patent by third party manufacturers. As explained above, upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 4 of the ’913 patent, by including one of the ’913 Accused Operating Systems, and therefore including the ’913 Accused Keypad Entry Functionality. Thereby, these third party manufacturers directly infringe at least claim 4 of the ’913 patent. Further, as explained above, Counterclaim Defendant has had knowledge of the ’913 patent since at least February 13, 2015, and has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’913 Accused Keypad Entry Functionality directly infringes the ’913 patent as of this date. Counterclaim Defendant has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the ’913 Accused Operating Systems, which include software code designed to practice the ’913 Accused Keypad Entry Functionality when executed. Third party manufacturers incorporate the ’913 Accused Operating Systems into their devices and make, have made, use, sell and/or offer to sell within the United States, and/or

import into the United States these devices to directly infringe the ’913 patent. Thus, the ’913 Accused Operating Systems constitute a material part of the ’913 patent.

52. Counterclaim Defendant has knowledge of the ’913 patent and knowledge that incorporation of the ’913 Accused Keypad Entry Functionality into devices necessarily directly infringes the ’913 patent. Further, the ’913 Accused Keypad Entry Functionality cannot be incorporated into a device without infringing the ’913 patent and has no use other than infringing the ’913 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’913 Accused Operating Systems are especially made and/or especially adapted for use in infringing the ’913 patent, at least because they include software code that was designed to practice the ’913 Accused Keypad Entry Functionality, which infringes the ’913 patent when incorporated in a third party manufacturer’s device. Moreover, the ’913 Accused Operating Systems are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’913 Accused Keypad Entry Functionality has no use apart from infringing the ’913 patent. Further, the included, above-referenced software code that practices the ’913 Accused Keypad Entry Functionality when executed is distinct and separate from the rest of the software code in the ’913 Accused Operating Systems and embodies, when incorporated into a device, each element of at least claim 4 of the ’913 patent.

53. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’913 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’913 patent by customers and end users of devices that run one of the ’913 Accused Operating Systems. As explained above, Counterclaim Defendant’s customers and other end users actually use the ’913 Accused Keypad Entry Functionality in the ’913

Accused Keypad Entry Devices and/or third party manufacturers' devices which include the '913 Accused Operating Systems to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the '913 patent and thereby directly infringe. Further, as explained above, Counterclaim Defendant has had knowledge of the'913 patent since at least February 13, 2015, and has also had knowledge that use of the '913 Accused Keypad Entry Functionality necessarily directly infringes the '913 patent as of this date. Counterclaim Defendant has incorporated into the '913 Accused Keypad Entry Devices, and has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the '913 Accused Operating Systems, which includes software code designed to practice the '913 Accused Keypad Entry Functionality when executed, and/or has offered software updates for the '913 Accused Keypad Entry Devices and third party devices that include software code designed to practice the '913 Accused Keypad Entry Functionality when executed. End users of the '913 Accused Keypad Entry Devices and third party manufacturer devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 which run the Windows 10 operating system), use the included '913 Accused Keypad Entry Functionality of the '913 Accused Operating Systems to directly infringe the '913 patent while using these devices. Thus, the '913 Accused Operating Systems constitute a material part of the '913 patent.

54. Counterclaim Defendant has knowledge of the '913 patent and knowledge that use of the '913 Accused Keypad Entry Functionality necessarily directly infringes the '913 patent. Further, the '913 Accused Keypad Entry Functionality cannot be practiced without infringing the '913 patent and has no use other than infringing the '913 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the '913

Accused Operating Systems and software updates for these operating systems are especially made and/or especially adapted for use in infringing the ’913 patent, at least because they include software code that was designed to practice the ’913 Accused Keypad Entry Functionality when executed, which infringes the ’913 patent. Moreover, the ’913 Accused Operating Systems and software updates for these operating systems are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’913 Accused Keypad Entry Functionality has no use apart from infringing the ’913 patent. Further, the included, above-referenced software code that practices the ’913 Accused Keypad Entry Functionality is distinct and separate from the rest of the software code in the ’913 Accused Operating Systems and, when executed, only practices, and can only be used to practice, each step of at least the method of claim 1 of the ’913 patent.

55. By reason of Counterclaim Defendant’s infringing activities, Philips has suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

56. Counterclaim Defendant has had actual notice and knowledge of the ’913 patent since at least February 13, 2015, as explained above, and upon information and belief, has known or should have known that its activities outlined in this Cause of Action infringe the ’913 patent directly or indirectly. Further, Philips met and communicated with Counterclaim Defendant on multiple occasions prior to the filing of this Counterclaim to explain Counterclaim Defendant’s infringement of the ’913 patent. Counterclaim Defendant has nonetheless continued to engage in and has escalated their infringing activities by developing, advertising, and selling additional infringing products since first becoming aware of their infringement of the ’913 patent (e.g., the Microsoft Surface Pro 4 was first sold by Counterclaim Defendant in October 2015 and is currently still being advertised for sale on Counterclaim Defendant’s website at

https://www.microsoftstore.com/store/msusa/en_US/pdp/Microsoft-Surface-Pro-4/productID.5072641000). Accordingly, Counterclaim Defendant's misconduct is willful and egregious and beyond typical infringement, and this case is exceptional under 35 U.S.C. § 285.

**Second Cause of Action: Infringement of U.S. Patent No. 6,690,387**

57. Philips repeats and incorporates by reference each and every allegation of paragraphs 1 through 34 of this Counterclaim, as though set forth here in its entirety.

58. Koninklijke Philips N.V. is the sole owner of the entire right, title, and interest in and to the '387 patent, including the right to sue and recover for any and all infringements thereof.

59. Claim 9 of the '387 patent is illustrative of the method claims of the '387 patent and is directed toward a method for controlling the scroll-like display of data on an electronic display screen. The duration of finger touch contact time with an electronic display screen having scrollable data displayed on it is sensed. The speed and direction of motion of the finger touch contact with the display screen is sensed. A scrolling motion of the scrollable data on the display screen is initiated in the sensed direction and at the sensed speed. The speed of the scrolling motion is slowed from its initiated speed at a predetermined rate. The scrolling motion is terminated when a condition of a substantially stationary finger touch having a finite duration is sensed or a condition of an end-of-scroll signal is sensed.

60. Claim 11 of the '387 patent depends from claim 9 and is directed toward the method of claim 9 comprising the further step of sensing a finger touch on the screen having a duration greater than a first given preset minimum time and less than a second given preset minimum time which is greater than the first given time and then moving the display in correspondence with movement of the finger touch.

61. Claim 12 of the ’387 patent depends from claim 9 and is directed toward the method of claim 9 comprising the further step of sensing a stationary finger touch on the screen having a duration greater than a second preset given minimum time which is greater than a first given preset time and then moving a touch-selected item relative to the stationary display in correspondence with movement of the finger touch.

62. Counterclaim Defendant has directly infringed and continues to directly infringe the ’387 patent in violation of 35 U.S.C. § 271(a) by using in the United States, without authority, smartphones, tablet computers, laptops, studios, hubs, and operating systems to practice, either literally or under the doctrine of equivalents, each step of at least the methods of claims 9, 11, and 12 of the ’387 patent.

63. For example, the Microsoft Surface Pro 4 is a tablet which runs the Windows 10 operating system, and the Microsoft Lumia 650 is a smartphone which runs the Windows 10 Mobile operating system. Both of these devices have scrolling control functionality similar to that summarized in the next three paragraphs (“the ’387 Accused Scrolling Control Functionality”), the use of which results in the practice of every step of at least claims 9, 11, and 12 of the ’387 patent, either literally or under the doctrine of equivalents, when operated by Counterclaim Defendant or other end users.

64. The Microsoft Surface Pro 4, which runs the Windows 10 operating system (see, e.g., https://www.microsoft.com/en-us/surface/devices/surface-pro-4/tech-specs), and the Microsoft Lumia 650, which runs the Windows 10 Mobile operating system (see, e.g., http://www.windowscentral.com/lumia-650), both have touch screens and both control the scroll-like display of data on their respective touch screens. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain hardware and/or software that sense the duration of finger

touch contact time with the touch screen having scrollable data (e.g., website content in an Internet browser or application icons in a folder) displayed on it. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain hardware and/or software that sense the speed and direction of the finger touch contact with the touch screen. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain hardware and/or software that initiate a scrolling motion of the scrollable data in the sensed direction and at the sensed speed (e.g., when a finger touching the screen is sensed as moving up the screen at a fast rate the website content or application icons in a folder are scrolled up the screen quickly or, as another example, when a finger touching the screen is sensed as moving down the screen at a slow rate the website content or application icons in a folder are scrolled down the screen slowly). The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain hardware and/or software that slow the speed of the scrolling motion from its initiated speed at a predetermined rate (e.g., the speed of the scrolling motion is slowed at a predetermined rate until motion is stopped). The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain hardware and/or software that terminate the scrolling motion when a condition of a substantially stationary finger touch having a finite duration is sensed (e.g., the scrolling motion is terminated if the finger touch is sensed as being substantially stationary for a finite duration) or a condition of an end-of-scroll signal is sensed (e.g., the scrolling motion is terminated if the bottom of the website content or application icons in a folder was reached).

65. Further, the Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain hardware and/or software that sense a finger touch on the screen having a duration greater than a first given preset minimum time (e.g., a finger touch on the screen is sensed as having a duration greater than the minimum duration for a “short press” touch) and less than a second given preset minimum time which is greater than the first given time (e.g., the sensed duration is less than the

minimum duration for a "long press" touch, which is longer than the "short press" touch duration) and then moving the display in correspondence with movement of the finger touch (e.g., the display is scrolled in a corresponding manner to the finger's movement when the finger touch on the screen is sensed as being longer than a "short press" touch but not long enough to be a "long press" touch).

66. Further, the Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain hardware and/or software that sense a stationary finger touch on the screen having a duration greater than a second preset given minimum time (e.g., a stationary finger touch on the screen is sensed as having a duration greater than the minimum duration for a "long press" touch) which is greater than a first given preset time (e.g., the duration of a "long press" touch is longer than the duration for a "short press" touch) and then moving a touch-selected item (e.g., an application icon that has been touched and selected by the "long press" touch) relative to the stationary display in correspondence with movement of the finger touch (e.g., the application icon is moved along the stationary display in a corresponding manner to the finger's movement).

67. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States operating systems that include software code designed to practice the above-referenced '387 Accused Scrolling Control Functionality, including, without limitation, the Windows 7, Windows 8, Windows 8.1, Windows 10, Windows RT 8.0, Windows RT 8.1, Windows Phone 8.1, and Windows 10 Mobile operating systems ("the '387 Accused Operating Systems"), and/or software updates that include the '387 Accused Scrolling Control Functionality. *See*, *e.g.*, https://blogs.msdn.microsoft.com/e7/2009/03/25/touching-windows-7/ and https://www.microsoft.com/surface/en-us/support/touch-mouse-and-search/using-touch-gestures-

tap-swipe-and-beyond?os=windows-8.1-update-1&=undefined.

68. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States smartphones, tablet computers, laptops, studios, and hubs that include the above-referenced ’387 Accused Scrolling Control Functionality (e.g., by being pre-loaded with one of the ’387 Accused Operating Systems) including, without limitation, the Microsoft Surface, Microsoft Surface Pro, Microsoft Surface 2, Microsoft Surface Pro 2, Microsoft Surface Pro 3, Microsoft Surface 3, Microsoft Surface Hub, Microsoft Surface Pro 4, Microsoft Surface Book, Microsoft Surface Studio, Nokia Lumia 930, Nokia Lumia 635, Nokia Lumia 530, Nokia Lumia 735, Nokia Lumia 830, Microsoft Lumia 435, Microsoft Lumia 640, Microsoft Lumia 640 XL, Microsoft Lumia 950, Microsoft Lumia 950 XL, Microsoft Lumia 550, and Microsoft Lumia 650 (“the ’387 Accused Scrolling Control Devices”).

69. Counterclaim Defendant has also actively induced, and continues to actively induce, its customers and other end users to infringe the ’387 patent in violation of 35 U.S.C. § 271(b) in connection with their use of the ’387 Accused Scrolling Control Devices and/or third party manufacturers’ devices which include the ’387 Accused Operating Systems. Upon information and belief, Counterclaim Defendant’s customers and other end users actually use the ’387 Accused Scrolling Control Functionality in the ’387 Accused Scrolling Control Devices and/or third party manufacturers’ devices which include the ’387 Accused Operating Systems to practice, either literally or under the doctrine of equivalents, each step of at least the method of claims 9, 11, and 12 of the ’387 patent and thereby directly infringe.

70. Counterclaim Defendant has had knowledge of the ’387 patent since at least February 13, 2015, when it was provided with actual notice of the patent, as explained above.

Counterclaim Defendant has also had knowledge that use of the '387 Accused Scrolling Control Functionality directly infringes the '387 patent by being given actual notice of the patent on February 13, 2015, and through other communications, meetings, and presentations made by Philips relating to infringement of the '387 patent. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce its customers and other end users to infringe the '387 patent via use of the '387 Accused Scrolling Control Devices and/or third party manufacturer devices (e.g. Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.). With knowledge of the '387 patent and knowledge that use of the '387 Accused Scrolling Control Functionality directly infringes the '387 patent, Counterclaim Defendant has: (i) offered for sale and/or sold to others, including customers and other end users, the '387 Accused Scrolling Control Devices that include the '387 Accused Scrolling Control Functionality (e.g., by being pre-loaded with one of the '387 Accused Operating Systems), (ii) offered for sale, sold and/or imported to third party manufacturers for incorporation into their devices, the '387 Accused Operating Systems, which includes software code designed to practice the '387 Accused Scrolling Control Functionality when executed, and/or (iii) has offered software updates for the '387 Accused Scrolling Control Devices and third party devices that include the '387 Accused Scrolling Control Functionality, and has provided to others instructions, user manuals, advertising, and/or marketing materials encouraging them to use the '387 Accused Scrolling Control Functionality and directly infringe the '387 patent.

71. As one example, Counterclaim Defendant provides user manuals (see, e.g., https://www.microsoft.com/surface/en-us/support/getting-started/get-started-with-surface-pro-

4#accordian-2) which facilitate, direct, or encourage others, including customers and other end users, to use the ’387 Accused Scrolling Control Functionality and thereby directly infringe at least the methods of claims 9, 11, and 12 of the ’387 patent. For example, the Microsoft Surface Pro 4 user manual includes at least the following instructions that direct a user to practice the ’387 Accused Scrolling Control Functionality: (1) under the “slide” tab: “How to do it: Drag your finger across the screen. What it does: Scrolls through what’s on the screen”; and (2) under the “slide to rearrange” tab: “How to do it: Tap and drag an item to a new location and then let go. What it does: Moves an item.” Counterclaim Defendant has knowledge that the instructions in this user manual encourage and facilitate the direct infringement of the ’387 patent by others, including customers and other end users, as Counterclaim Defendant has had knowledge of the ’387 patent and that use of the ’387 Accused Scrolling Control Functionality directly infringes the ’387 patent since at least February 13, 2015, as explained above.

72. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’387 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’387 patent by customers and end users of devices that run one of the ’387 Accused Operating Systems. As explained above, Counterclaim Defendant’s customers and other end users actually use the ’387 Accused Scrolling Control Functionality in the ’387 Accused Scrolling Control Devices and/or third party manufacturers’ devices which include the ’387 Accused Operating Systems to practice each step of at least the methods of claims 9, 11, and 12 of the ’387 patent and thereby directly infringe. Further, as explained above, Counterclaim Defendant has had knowledge of the ’387 patent since at least February 13, 2015, and has also had knowledge that use of the ’387 Accused Scrolling Control Functionality necessarily directly infringes the ’387 patent as of this date. Counterclaim Defendant has

incorporated into the '387 Accused Scrolling Control Devices, and has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the '387 Accused Operating Systems, which includes software code designed to practice the '387 Accused Scrolling Control Functionality when executed, and/or has offered software updates for the '387 Accused Scrolling Control Devices and third party devices that include software code designed to practice the '387 Accused Scrolling Control Functionality when executed. End users of the '387 Accused Scrolling Control Devices and third party manufacturer devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 which run the Windows 10 operating system), use the included '387 Accused Scrolling Control Functionality of the '387 Accused Operating Systems to directly infringe the '387 patent while using these devices. Thus, the '387 Accused Operating Systems constitute a material part of the '387 patent.

73. Counterclaim Defendant has knowledge of the '387 patent and knowledge that use of the '387 Accused Scrolling Control Functionality necessarily directly infringes the '387 patent. Further, the '387 Accused Scrolling Control Functionality cannot be practiced without infringing the '387 patent and has no use other than infringing the '387 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the '387 Accused Operating Systems and software updates for these operating systems are especially made and/or especially adapted for use in infringing the '387 patent, at least because they include software code that was designed to practice the '387 Accused Scrolling Control Functionality when executed, which infringes the '387 patent. Moreover, the '387 Accused Operating Systems and software updates for these operating systems are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that

practices the ’387 Accused Scrolling Control Functionality has no use apart from infringing the ’387 patent. Further, the included, above-referenced software code that practices the ’387 Accused Scrolling Control Functionality is distinct and separate from the rest of the software code in the ’387 Accused Operating Systems and, when executed, only practices, and can only be used to practice, each step of at least the methods of claim 9, 11, and 12 of the ’387 patent.

74. By reason of Counterclaim Defendant’s infringing activities, Philips has suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

75. Counterclaim Defendant has had actual notice and knowledge of the ’387 patent since at least February 13, 2015, as explained above, and upon information and belief, has known or should have known that its activities outlined in this Cause of Action infringe the ’387 patent directly or indirectly. Further, Philips has met and communicated with Counterclaim Defendant on multiple occasions prior to the filing of this Counterclaim to explain Counterclaim Defendant’s infringement of the ’387 patent. Counterclaim Defendant has nonetheless continued to engage in and has escalated its infringing activities by developing, advertising, and selling additional infringing products since first becoming aware of its infringement of the ’387 patent (e.g., the Microsoft Surface Pro 4 was first sold by Counterclaim Defendant in October 2015 and is currently still being advertised for sale on Counterclaim Defendant’s website at https://www.microsoftstore.com/store/msusa/en_US/pdp/Microsoft-Surface-Pro-4/productID.5072641000). Accordingly, Counterclaim Defendant’s misconduct is willful and egregious and beyond typical infringement, and this case is exceptional under 35 U.S.C. § 285.

## Third Cause of Action: Infringement of U.S. Patent No. 7,184,064

76. Philips repeats and incorporates by reference each and every allegation of paragraphs 1 through 34 of this Counterclaim, as though set forth here in its entirety.

77. Koninklijke Philips N.V. is the sole owner of the entire right, title, and interest in and to the ’064 patent, including the right to sue and recover for any and all infringements thereof.

78. Claim 1 of the ’064 patent is illustrative of the system claims of the ’064 patent and is directed to an improved touch-screen image scrolling system. The system has an electronic image display screen and a microprocessor coupled to the screen to display information on the screen and to receive interactive signals from the screen. The system has timer means associated with the microprocessor to provide timing capacity for it. The system has a source of scroll format data that is capable of being displayed on the screen. The system has finger touch program instructions associated with the microprocessor to sense the speed, direction, and time duration of a finger touch contact with the screen. The system has scrolling motion program instructions associated with the microprocessor that is responsive to the duration of the finger touch contact such that if the duration exceeds a first preset minimum time and is accompanied by motion along the surface of the screen followed by separation of the finger from the screen, a scroll format display on the screen is caused to begin to scroll in the sensed direction and at the sensed initial speed. The system has time decay program instructions associated with the microprocessor to reduce the rate of scrolling displacement on the screen at a given rate until motion is terminated. The system has stopping motion program instructions associated with the microprocessor to terminate the scrolling displacement of the image on the screen upon first occurrence of a signal comprising a substantially stationary finger touch on the screen for longer than a preset minimum or an end-of scroll signal received from the scroll format data source.

79. Claim 2 of the ’064 patent depends from claim 1 and is directed toward the

system of claim 1 wherein the scrolling motion program instructions further comprise instructions to move the display in correspondence with movement of the finger touch, in response to movement following a touch having a stationary duration greater than the first preset given minimum time and less than a second given preset minimum time.

80. Claim 3 of the ’064 patent depends from claim 1 and is directed toward the system of claim 1 wherein scrolling motion program instructions further comprise instructions to move a touch-selected item relative to the stationary display in correspondence with movement of the finger touch, in response to motion following a touch having a stationary duration greater than a second given preset minimum time.

81. Counterclaim Defendant has directly infringed and continues to directly infringe the ’064 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, without authority, smartphones, tablet computers, laptops, studios, and hubs that embody, either literally or under the doctrine of equivalents, each element of at least claims 1, 2, and 3 of the ’064 patent.

82. For example, the Microsoft Surface Pro 4 is a tablet which runs the Windows 10 operating system, and the Microsoft Lumia 650 is a smartphone which runs the Windows 10 Mobile operating system. Both of these devices have scrolling control functionality similar to that summarized in the next three paragraphs (“the ’064 Accused Scrolling Control Functionality”) that meets every element of at least claims 1, 2, and 3 of the ’064 patent, either literally or under the doctrine of equivalents.

83. The Microsoft Surface Pro 4, which runs the Windows 10 operating system (see, e.g., https://www.microsoft.com/en-us/surface/devices/surface-pro-4/tech-specs), and the

Microsoft Lumia 650, which runs the Windows 10 Mobile operating system (see, e.g., http://www.windowscentral.com/lumia-650), both have a touch screen and a microprocessor (e.g., the 6th Generation Intel Core m3, i5, or i7, and the Qualcomm Snapdragon 212, respectively) which displays information on the screen and receives interactive signals from the screen. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain hardware and/or software that provide timing capacity for the microprocessor. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain hardware and/or software that are a source of scroll format data (e.g., a memory holding scrollable data such as website content in an Internet browser or application icons in a folder) that can be displayed on the screen. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain software program instructions associated with the microprocessor that sense the speed, direction, and time duration of a finger touch contact with the screen. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain software program instructions associated with the microprocessor that is responsive to the duration of the finger touch contact such that if the duration exceeds a first preset minimum time (e.g., the duration of a finger touching the screen is sensed as being greater than the minimum duration for a "short press" touch) and is accompanied by motion along the surface of the screen followed by separation of the finger from the screen, a scroll format display on the screen is caused to begin to scroll in the sensed direction and at the sensed initial speed (e.g., when a finger touching the screen is sensed as moving up the screen at a fast rate the website content or application icons in a folder are scrolled up the screen quickly or, as another example, when a finger touching the screen is sensed as moving down the screen at a slow rate the website content or application icons in a folder are scrolled down the screen slowly). The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain software program instructions associated with the

microprocessor that reduce the rate of scrolling displacement on the screen at a given rate until motion is terminated (e.g., the scrolling displacement is slowed at a given rate until motion is stopped). The Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain software program instructions associated with the microprocessor that terminate the scrolling displacement of the image on the screen upon first occurrence of a signal comprising a substantially stationary finger touch on the screen for longer than a preset minimum (e.g., the scrolling displacement of the image on the screen is terminated if the finger touch is sensed as being substantially stationary for longer than a preset minimum) or an end-of-scroll signal is received from the scroll format data source (e.g., the scrolling displacement of the image on the screen is terminated if the bottom of the website content or application icons in a folder was reached).

84. Further, the Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain scrolling motion program instructions to move the display in correspondence with movement of the finger touch (e.g., the display is scrolled in a corresponding manner to the finger's movement when the finger touching the screen is sensed as being longer than a "short press" touch but not long enough to be a "long press" touch as described below), in response to movement following a touch having a stationary duration greater than the first preset given minimum time (e.g., the stationary duration of a finger touching the screen is sensed as being greater than the minimum duration for a "short press" touch) and less than a second given preset minimum time (e.g., the sensed duration is less than the minimum duration for a "long press" touch).

85. Further, the Microsoft Surface Pro 4 and Microsoft Lumia 650 both contain scrolling motion program instructions to move a touch-selected item (e.g., an application icon that has been touched and selected by the "long press" touch as described below) relative to the stationary display in correspondence with movement of the finger touch (e.g., the application

icon is moved along the stationary display in a corresponding manner to the finger's movement), in response to motion following a touch having a stationary duration greater than a second given preset minimum time (e.g., the sensed stationary duration is greater than the minimum duration for a "long press" touch).

86. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States operating systems that include software code designed to practice the above-referenced '064 Accused Scrolling Control Functionality, including, without limitation, the Windows 7, Windows 8, Windows 8.1, Windows 10, Windows RT 8.0, Windows RT 8.1, Windows Phone 8.1, and Windows 10 Mobile operating systems ("the '064 Accused Operating Systems"), and/or software updates that include the '064 Accused Scrolling Control Functionality. *See*, *e.g.*, https://blogs.msdn.microsoft.com/e7/2009/03/25/touching-windows-7/ and https://www.microsoft.com/surface/en-us/support/touch-mouse-and-search/using-touch-gestures-tap-swipe-and-beyond?os=windows-8.1-update-1&=undefined.

87. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States smartphones, tablet computers, laptops, studios, and hubs that include the above-referenced '064 Accused Scrolling Control Functionality (e.g., by being pre-loaded with one of the '064 Accused Operating Systems) including, without limitation, the Microsoft Surface, Microsoft Surface Pro, Microsoft Surface 2, Microsoft Surface Pro 2, Microsoft Surface Pro 3, Microsoft Surface 3, Microsoft Surface Hub, Microsoft Surface Pro 4, Microsoft Surface Book, Microsoft Surface Studio, Nokia Lumia 930, Nokia Lumia 635, Nokia Lumia 530, Nokia Lumia 735, Nokia Lumia 830, Microsoft Lumia 435, Microsoft Lumia 640, Microsoft Lumia 640 XL, Microsoft Lumia

950, Microsoft Lumia 950 XL, Microsoft Lumia 550, and Microsoft Lumia 650 ("the '064 Accused Scrolling Control Devices").

88. Counterclaim Defendant has also actively induced, and continues to actively induce infringement of the '064 patent in violation of 35 U.S.C. § 271(b). Upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claims 1, 2, and 3 of the '064 patent, by including one of the '064 Accused Operating Systems, and therefore including the '064 Accused Scrolling Control Functionality. Thereby, the third party manufacturers directly infringe at least claims 1, 2, and 3 of the '064 patent.

89. Counterclaim Defendant has had knowledge of the '064 patent since at least February 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the '064 Accused Scrolling Control Functionality directly infringes the '064 patent, by being given actual notice of the patent on February 13, 2015, and through other communications, meetings, and presentations made by Philips relating to infringement of the '064 patent. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce infringement as, with knowledge of the '064 patent and knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the '064 Accused

Scrolling Control Functionality directly infringes the ’064 patent, Counterclaim Defendant has offered for sale, sold, and/or imported to others, including third party manufacturers, the ’064 Accused Operating Systems, which Counterclaim Defendant knows to include software code designed to practice the ’064 Accused Scrolling Control Functionality when executed. Counterclaim Defendant has further provided to those third party manufacturers instructions, user manuals, advertising, and/or marketing materials encouraging them and directing them how to incorporate the ’064 Accused Operating Systems into the devices they make, have made, use, sell, and/or offer to sell within the United States, and/or import into the United States, and directly infringe the ’064 patent.

90. For example, the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 each come pre-installed with the Windows 10 operating system, and therefore come pre-installed with software code which practices the ’064 Accused Scrolling Control Functionality when executed. Upon information and belief, Counterclaim Defendant provides third party manufacturers Acer, ASUS, Double Power, Visual Land, and YiFang with instructions and/or user manuals which facilitate and direct these third party manufacturers how to incorporate the Windows 10 operating system into the above-listed devices that each company makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States. Thereby, Counterclaim Defendant facilitates, directs, or encourages Acer, ASUS, Double Power, Visual Land, and YiFang to directly infringe at least claims 1, 2, and 3 of the ’064 patent.

91. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’064 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’064 patent by third party manufacturers. As explained above, upon

information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claims 1, 2, and 3 of the '064 patent, by including one of the '064 Accused Operating Systems, and therefore including the '064 Accused Scrolling Control Functionality. Thereby, these third party manufacturers directly infringe at least claims 1, 2, and 3 of the '064 patent. Further, as explained above, Counterclaim Defendant has had knowledge of the '064 patent since at least February 13, 2015, and has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the '064 Accused Scrolling Control Functionality directly infringes the '064 patent as of this date. Counterclaim Defendant has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the '064 Accused Operating Systems, which include software code designed to practice the '064 Accused Scrolling Control Functionality when executed. Third party manufacturers incorporate the '064 Accused Operating Systems into their devices and make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States these devices to directly infringe the '064 patent. Thus, the '064 Accused Operating Systems constitute a material part of the '064 patent.

92. Counterclaim Defendant has knowledge of the '064 patent and knowledge that incorporation of the '064 Accused Scrolling Control Functionality into devices necessarily directly infringes the '064 patent. Further, the '064 Accused Scrolling Control Functionality cannot be incorporated into a device without infringing the '064 patent and has no use other than

infringing the ’064 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’064 Accused Operating Systems are especially made and/or especially adapted for use in infringing the ’064 patent, at least because they include software code that was designed to practice the ’064 Accused Scrolling Control Functionality, which infringes the ’064 patent when incorporated in a third party manufacturer’s device. Moreover, the ’064 Accused Operating Systems are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’064 Accused Scrolling Control Functionality has no use apart from infringing the ’064 patent. Further, the included, above-referenced software code that practices the ’064 Accused Scrolling Control Functionality when executed is distinct and separate from the rest of the software code in the ’064 Accused Operating Systems and embodies, when incorporated into a device, each element of at least claims 1, 2, and 3 of the ’064 patent.

93. By reason of Counterclaim Defendant’s infringing activities, Philips has suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

94. Counterclaim Defendant has had actual notice and knowledge of the ’064 patent since at least February 13, 2015, as explained above, and upon information and belief, has known or should have known that its activities outlined in this Cause of Action infringe the ’064 patent directly. Further, Philips has met and communicated with Counterclaim Defendant on multiple occasions prior to the filing of this Counterclaim to explain Counterclaim Defendant’s infringement of the ’064 patent. Counterclaim Defendant has nonetheless continued to engage in and has escalated its infringing activities by developing, advertising, and selling additional infringing products since first becoming aware of their infringement of the ’064 patent (e.g., the Microsoft Surface Pro 4 was first sold by Counterclaim Defendant in October 2015 and is

currently still being advertised for sale on Counterclaim Defendant's website at https://www.microsoftstore.com/store/msusa/en_US/pdp/Microsoft-Surface-Pro-4/productID.5072641000). Accordingly, Counterclaim Defendant's misconduct is willful and egregious and beyond typical infringement, and this case is exceptional under 35 U.S.C. § 285.

**Fourth Cause of Action: Infringement of U.S. Patent No. 7,529,806**

95. Philips repeats and incorporates by reference each and every allegation of paragraphs 1 through 34 of this Counterclaim, as though set forth here in its entirety.

96. Koninklijke Philips N.V. is the sole owner of the entire right, title, and interest in and to the '806 patent, including the right to sue and recover for any and all infringements thereof.

97. Claim 1 of the '806 patent is illustrative of the method claims of the '806 patent and is directed toward a method of forming a media presentation at a client device from multiple related files, including a control information file, stored on one or more server computers within a computer network. The control information file is downloaded to the client device. The client device parses the control information file and based thereon, the client device: identifies multiple alternative files corresponding to a given segment of the media presentation, determines which file of the multiple alternative files to retrieve based on system restraints, and retrieves the determined file to begin a media presentation. If the determined file is one of a plurality of files required for the media presentation, the client device retrieves a next file concurrent with the media presentation and uses content of the next file to continue the media presentation.

98. Claim 12 of the '806 patent is illustrative of the device claims of the '806 patent and is directed toward a client device for forming a media presentation from multiple related files stored on server computers within a computer network. The client device has means for

downloading files to the client device. The client device has means for parsing a control information file and based thereon identifying multiple alternative files corresponding to a given segment of the media presentation, determining which file of the alternative files to retrieve based on system restraints, and retrieving the determined file to begin a media presentation. If the determined file is one of a plurality of files required for the media presentation, the means for parsing comprises means for retrieving a next file concurrent with the media presentation and using content of the next file to continue the media presentation.

99. Counterclaim Defendant has directly infringed and continues to directly infringe the ’806 patent in violation of 35 U.S.C. § 271(a) by using in the United States, without authority, smartphones, tablet computers, laptops, studios, hubs, video game consoles, browsers and operating systems to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the ’806 patent.

100. Counterclaim Defendant has directly infringed and continues to directly infringe the ’806 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, without authority, smartphones, tablet computers, laptops, studios, hubs, and video game consoles that embody, either literally or under the doctrine of equivalents, each element of at least claim 12 of the ’806 patent.

101. For example, the Microsoft Surface Pro 4 is a tablet which runs the Windows 10 operating system, and the Microsoft Lumia 650 is a smartphone which runs the Windows 10 Mobile operating system. Both of these devices have streaming video functionality similar to that summarized in the next paragraph (“the ’806 Accused Streaming Video Functionality”) that meets every element of at least claim 12 of the ’806 patent, either literally or under the doctrine

of equivalents, and the use of which results in the practice of every step of at least claim 1 of the ’806 patent, either literally or under the doctrine of equivalents, when operated by Counterclaim Defendant or other end users.

102. The Microsoft Surface Pro 4 runs the Windows 10 operating system (see, e.g., https://www.microsoft.com/en-us/surface/devices/surface-pro-4/tech-specs), and the Microsoft Lumia 650 runs the Windows 10 Mobile operating system (see, e.g., http://www.windowscentral.com/lumia-650). Since Microsoft Windows Operating System version 10, the Microsoft Windows Operating System has supported HTTP Live Streaming (HLS) (see, e.g., https://blogs.msdn.microsoft.com/ie/2015/01/29/simplified-adaptive-video-streaming-announcing-support-for-hls-and-dash-in-windows-10/). Since Microsoft Windows Operating System version 8.1, the Microsoft Windows Operating System has supported MPEG-DASH (Dynamic Adaptive Streaming over HTTP) (see, e.g., *Id.* and https://blogs.msdn.microsoft.com/ie/2013/09/05/online-professional-quality-video-premium-media-experiences-without-plug-ins-in-internet-explorer-11/). HLS and MPEG-DASH are video streaming technologies that allow a device, such as the Microsoft Surface Pro 4 or the Microsoft Lumia 650, to form a media presentation from multiple related files stored on server computers in a computer network by use of the device’s Internet browser and/or a video playback application such as YouTube. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both have a wireless modem and related software for downloading a control information file (e.g., a MPD file for MPEG-DASH or a M3U8 file for HLS) to the device. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both have a processor (e.g., the 6th Generation Intel Core m3, i5, or i7, and the Qualcomm Snapdragon 212, respectively) programmed to parse the control information file (e.g., the processor parses the MPD file or M3U8 file) and based thereon, identifying multiple

alternative files corresponding to a given segment of the media presentation (e.g., identifying based on the MPD file or M3U8 file alternative files that correspond to a video segment; for example, a video is encoded into higher quality and lower quality streams and each stream is divided into chunks, such as MPEG-2 transport stream files, and higher quality and lower quality files that correspond to a given video segment are identified based on the MPD file or M3U8 file), determining which file of the alternative files to retrieve based on system restraints (e.g., determining that a lower quality file should be retrieved when bandwidth is more limited or a higher quality file should be retrieved when bandwidth is less limited), and retrieving the determined file to begin a media presentation. If the determined file is one of a plurality of files required for the media presentation, the processor retrieves a next file concurrent with the media presentation and uses content of the next file to continue the media presentation.

103. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States operating systems and browsers that include software code designed to practice the above-referenced ’806 Accused Streaming Video Functionality, including, without limitation, the Windows 8.1, Windows 10, Windows RT 8.1, Windows Phone 8.1, and Windows 10 Mobile operating systems, and the Microsoft Edge Browser (“the ’806 Accused Operating Systems”), and/or software updates that include the ’806 Accused Streaming Video Functionality. *See*, *e.g.*, https://blogs.msdn.microsoft.com/ie/2015/01/29/simplified-adaptive-video-streaming-announcing-support-for-hls-and-dash-in-windows-10/; and https://blogs.msdn.microsoft.com/ie/2013/09/05/online-professional-quality-video-premium-media-experiences-without-plug-ins-in-internet-explorer-11/.

104. Upon information and belief, Counterclaim Defendant makes, has made, uses,

sells and/or offers to sell within the United States and/or imports into the United States smartphones, tablet computers, laptops, studios, hubs, and video game consoles that include the above-referenced ’806 Accused Streaming Video Functionality (e.g., by being pre-loaded with one of the ’806 Accused Operating Systems) including, without limitation, the Microsoft Surface 2, Microsoft Surface Pro 2, Microsoft Surface Pro 3, Microsoft Surface 3, Microsoft Surface Hub, Microsoft Surface Pro 4, Microsoft Surface Book, Microsoft Surface Studio, Nokia Lumia 930, Nokia Lumia 635, Nokia Lumia 530, Nokia Lumia 735, Nokia Lumia 830, Microsoft Lumia 435, Microsoft Lumia 640, Microsoft Lumia 640 XL, Microsoft Lumia 950, Microsoft Lumia 950 XL, Microsoft Lumia 550, Microsoft Lumia 650, Xbox One, and Xbox One S (“the ’806 Accused Microsoft Streaming Video Devices”).

105. Counterclaim Defendant has also actively induced, and continues to actively induce infringement of the ’806 patent in violation of 35 U.S.C. § 271(b). Upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 12 of the ’806 patent, by including one of the ’806 Accused Operating Systems, and therefore including the ’806 Accused Streaming Video Functionality. Thereby, the third party manufacturers directly infringe at least claim 12 of the ’806 patent.

106. Counterclaim Defendant has had knowledge of the ’806 patent since at least October 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that making, having made, using, selling and/or

offering to sell within the United States, and/or importing into the United States, devices which include the ’806 Accused Streaming Video Functionality directly infringes the ’806 patent, by being given actual notice of the patent upon viewing a presentation related to infringement of the ’806 patent made by Philips on October 13, 2015, and through other communications, meetings, and presentations. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce infringement as, with knowledge of the ’806 patent and knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’806 Accused Streaming Video Functionality directly infringes the ’806 patent, Counterclaim Defendant has offered for sale, sold, and/or imported to others, including third party manufacturers, the ’806 Accused Operating Systems, which Counterclaim Defendant knows to include software code designed to practice the ’806 Accused Streaming Video Functionality when executed. Counterclaim Defendant has further provided to those third party manufacturers instructions, user manuals, advertising, and/or marketing materials encouraging them and directing them how to incorporate the ’806 Accused Operating Systems into the devices they make, have made, use, sell, and/or offer to sell within the United States, and/or import into the United States, and directly infringe the ’806 patent.

107. For example, the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 each come pre-installed with the Windows 10 operating system, and therefore come pre-installed with software code which practices the ’806 Accused Streaming Video Functionality when executed. Upon information and belief, Counterclaim Defendant provides third party manufacturers Acer, ASUS, Double Power, Visual Land, and YiFang with instructions and/or user manuals which

facilitate and direct these third party manufacturers how to incorporate the Windows 10 operating system into the above-listed devices that each company makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States. Thereby, Counterclaim Defendant facilitates, directs, or encourages Acer, ASUS, Double Power, Visual Land, and YiFang to directly infringe at least claim 12 of the ’806 patent.

108. Counterclaim Defendant has also actively induced, and continues to actively induce, its customers and other end users to infringe the ’806 patent in violation of 35 U.S.C. § 271(b) in connection with their use of the ’806 Accused Streaming Video Devices and/or third party manufacturers’ devices which include the ’806 Accused Operating Systems. Upon information and belief, Counterclaim Defendant’s customers and other end users actually use the ’806 Accused Streaming Video Functionality in the ’806 Accused Streaming Video Devices and/or third party manufacturers’ devices which include the ’806 Accused Operating Systems to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the ’806 patent and thereby directly infringe.

109. Counterclaim Defendant has had knowledge of the ’806 patent since at least October 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that use of the ’806 Accused Streaming Video Functionality directly infringes the ’806 patent by being given actual notice of the patent upon viewing a presentation related to infringement of the ’806 patent made by Philips on October 13, 2015, and through other communications, meetings, and presentations. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce its customers and other end users to infringe the ’806 patent via use of the ’806 Accused Streaming Video Devices and/or third party manufacturer devices (e.g. Acer

Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.). With knowledge of the ’806 patent and knowledge that use of the ’806 Accused Streaming Video Functionality directly infringes the ’806 patent, Counterclaim Defendant has: (i) offered for sale and/or sold to others, including customers and other end users, the ’806 Accused Streaming Video Devices that include the ’806 Accused Streaming Video Functionality (e.g., by being pre-loaded with one of the ’806 Accused Operating Systems), (ii) offered for sale, sold and/or imported to third party manufacturers for incorporation into their devices, the ’806 Accused Operating Systems, which includes software code designed to practice the ’806 Accused Streaming Video Functionality when executed, and/or (iii) has offered software updates for the ’806 Accused Streaming Video Devices and third party devices that include the ’806 Accused Streaming Video Functionality, and has provided to others instructions, user manuals, advertising, and/or marketing materials encouraging them to use the ’806 Accused Streaming Video Functionality and directly infringe the ’913 patent.

110. As one example, Counterclaim Defendant provides to others customized Microsoft Windows Operating System software updates (see, e.g., https://www.microsoft.com/surface/en-us/support/install-update-activate/updating-to-windows-8-1?os=windows-8.1-rt-update-3&=undefined) which facilitate, direct, or encourage others, including customers and other end users, to use the ’806 Accused Streaming Video Functionality and thereby directly infringe at least the method of claim 1 of the ’806 patent. Counterclaim Defendant has knowledge that these software updates and instructions encourage and facilitate the direct infringement of the ’806 patent by others, including customers and other end users, as Counterclaim Defendant has had knowledge of the ’806 patent since at least October 13, 2015,

as explained above, and is aware that these software updates support MPEG-DASH and/or HLS (see, e.g., https://blogs.msdn.microsoft.com/ie/2015/01/29/simplified-adaptive-video-streaming-announcing-support-for-hls-and-dash-in-windows-10/ describing new features in Windows 10: "With Windows 10, Microsoft is announcing browser support for HTTP Live Streaming (HLS) and enhanced support for MPEG DASH in the new EdgeHTML rendering engine" and https://blogs.msdn.microsoft.com/ie/2013/09/05/online-professional-quality-video-premium-media-experiences-without-plug-ins-in-internet-explorer-11/ describing new features in Windows 8.1: "MPEG-DASH is an emerging specification for Internet Streaming. MSE in Internet Explorer 11 on Windows 8.1 supports MPEG-DASH content that adheres to the ISO BMFF profiles defined in the specification.").

111. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the '806 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the '806 patent by third party manufacturers. As explained above, upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 12 of the '806 patent, by including one of the '806 Accused Operating Systems, and therefore including the '806 Accused Streaming Video Functionality. Thereby, these third party manufacturers directly infringe at least claim 12 of the '806 patent. Further, as explained above, Counterclaim Defendant has had knowledge of the '806 patent since at least October 13, 2015, and has also had knowledge that making, having made, using, selling and/or

offering to sell within the United States, and/or importing into the United States, devices which include the ’806 Accused Streaming Video Functionality directly infringes the ’806 patent as of this date. Counterclaim Defendant has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the ’806 Accused Operating Systems, which include software code designed to practice the ’806 Accused Streaming Video Functionality when executed. Third party manufacturers incorporate the ’806 Accused Operating Systems into their devices and make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States these devices to directly infringe the ’806 patent. Thus, the ’806 Accused Operating Systems constitute a material part of the ’806 patent.

112. Counterclaim Defendant has knowledge of the ’806 patent and knowledge that incorporation of the ’806 Accused Streaming Video Functionality into devices necessarily directly infringes the ’806 patent. Further, the ’806 Accused Streaming Video Functionality cannot be incorporated into a device without infringing the ’806 patent and has no use other than infringing the ’806 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’806 Accused Operating Systems are especially made and/or especially adapted for use in infringing the ’806 patent, at least because they include software code that was designed to practice the ’806 Accused Streaming Video Functionality, which infringes the ’806 patent when incorporated in a third party manufacturer’s device. Moreover, the ’806 Accused Operating Systems are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’806 Accused Streaming Video Functionality has no use apart from infringing the ’806 patent. Further, the included, above-referenced software code that practices the ’806 Accused Streaming Video Functionality when executed is distinct and separate from the rest of the

software code in the ’806 Accused Operating Systems and embodies, when incorporated into a device, each element of at least claim 12 of the ’806 patent.

113. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’806 patent in violation of 35 U.S.C. § 271(c) in connection with the direct infringement of the ’806 patent by customers and end users of devices that run one of the ’806 Accused Operating Systems. As explained above, Counterclaim Defendant’s customers and other end users actually use the ’806 Accused Streaming Video Functionality in the ’806 Accused Streaming Video Devices and/or third party manufacturers’ devices which include the ’806 Accused Operating Systems to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the ’806 patent and thereby directly infringe. Further, as explained above, Counterclaim Defendant has had knowledge of the ’806 patent since at least October 13, 2015, and has also had knowledge that use of the ’806 Accused Streaming Video Functionality necessarily directly infringes the ’806 patent as of this date. Counterclaim Defendant has incorporated into the ’806 Accused Streaming Video Devices, and has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the ’806 Accused Operating Systems, which includes software code designed to practice the ’806 Accused Streaming Video Functionality when executed, and/or has offered software updates for the ’806 Accused Streaming Video Devices and third party devices that include software code designed to practice the ’806 Accused Streaming Video Functionality when executed. End users of the ’806 Accused Streaming Video Devices and third party manufacturer devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 which run the Windows 10 operating system), use the included ’806 Accused Streaming Video Functionality of the ’806 Accused

Operating Systems to directly infringe the ’806 patent while using these devices. Thus, the ’806 Accused Operating Systems constitute a material part of the ’806 patent.

114. Counterclaim Defendant has knowledge of the ’806 patent and knowledge that use of the ’806 Accused Streaming Video Functionality necessarily directly infringes the ’806 patent. Further, the ’806 Accused Streaming Video Functionality cannot be practiced without infringing the ’806 patent and has no use other than infringing the ’806 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’806 Accused Operating Systems and software updates for these operating systems are especially made and/or especially adapted for use in infringing the ’806 patent, at least because they include software code that was designed to practice the ’806 Accused Streaming Video Functionality when executed, which infringes the ’806 patent. Moreover, the ’806 Accused Operating Systems and software updates for these operating systems are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’806 Accused Streaming Video Functionality has no use apart from infringing the ’806 patent. Further, the included, above-referenced software code that practices the ’806 Accused Streaming Video Functionality is distinct and separate from the rest of the software code in the ’806 Accused Operating Systems and, when executed, only practices, and can only be used to practice, each step of at least the method of claim 1 of the ’806 patent.

115. By reason of Counterclaim Defendant’s infringing activities, Philips has suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

116. Counterclaim Defendant has had actual notice and knowledge of the ’806 patent since at least October 13, 2015, as explained above, and upon information and belief, has known or should have known that their activities outlined in this Cause of Action infringe the ’806

patent directly or indirectly. Further, Philips has met and communicated with Counterclaim Defendant on multiple occasions prior to the filing of this Counterclaim to explain Counterclaim Defendant's infringement of the '806 patent. Counterclaim Defendant has nonetheless continued to engage in and has escalated their infringing activities by developing, advertising, and selling additional infringing products since first becoming aware of their infringement of the '806 patent (e.g., the Microsoft Surface Pro 4 was first sold by Counterclaim Defendant in October 2015 and is currently still being advertised for sale on Counterclaim Defendant's website at https://www.microsoftstore.com/store/msusa/en_US/pdp/Microsoft-Surface-Pro-4/productID.5072641000). Accordingly, Counterclaim Defendant's misconduct is willful and egregious and beyond typical infringement, and this case is exceptional under 35 U.S.C. § 285.

**Fifth Cause of Action: Infringement of U.S. Patent No. 5,910,797**

117. Philips repeats and incorporates by reference each and every allegation of paragraphs 1 through 34 of this Counterclaim, as though set forth here in its entirety.

118. U.S. Philips Corporation is the sole owner of the entire right, title, and interest in and to the '797 patent, including the right to sue and recover for any and all infringements thereof.

119. Claim 6 of the '797 patent is illustrative of the apparatus claims of the '797 patent and is directed to a manipulatable apparatus that has data processing means and screen means for displaying one or more graphical or other objects presented by the data processing means. The apparatus has a gravitation-controlled sensor integrated with the screen means and feeding the data processing means for measuring an acceleration of the screen means that is induced by user manipulation of the screen means. The data processing means have programmed calculating means for, under control of a screen motion sensed by the sensing means, imparting an

acceleration based motion pattern to a predetermined selection among the objects. The motion is nonuniform in time under control of a static orientation of the screen means.

120. Counterclaim Defendant has directly infringed and continues to directly infringe the ’797 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, without authority, smartphones that embody, either literally or under the doctrine of equivalents, each element of at least claim 6 of the ’797 patent.

121. As one example, the Microsoft Lumia 650 is a smartphone which runs the Windows 10 Mobile operating system and which has gravitation-controlled motion functionality similar to that summarized in the next paragraph (“the ’797 Accused Gravitation-Controlled Motion Functionality”) that meets every element of at least claim 6 of the ’797 patent, either literally or under the doctrine of equivalents.

122. The Microsoft Lumia 650, which runs the Windows 10 Mobile operating system (see, e.g., http://www.windowscentral.com/lumia-650), has a processor (e.g., the Qualcomm Snapdragon 212) and a display screen for displaying one or more graphical or other objects (e.g., a virtual keyboard) presented by the processor. The Microsoft Lumia 650 has a gravitation controlled sensor (e.g., an accelerometer) that is integrated with the display screen and feeds the processor and measures the acceleration of the screen that is induced by a user manipulating the display screen (e.g., the accelerometer measures the acceleration of the screen when a user changes the orientation of the screen from portrait to landscape). The processor has software that, under the control of a screen motion sensed by the sensor (e.g., when the accelerometer senses a screen motion such as when the screen’s orientation is changed from portrait to landscape), imparts an acceleration based motion pattern to predetermined selected objects (e.g.,

the processor imparts an acceleration-based motion pattern that rotates the virtual keyboard from a portrait orientation to a landscape orientation). The motion is nonuniform in time under control of a static orientation of the screen (e.g., when the screen is held in a static landscape orientation after being rotated from a portrait orientation to a landscape orientation, the virtual keyboard rotates from the portrait orientation to the landscape orientation with a motion that is nonuniform in time).

123. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States operating systems that include software code designed to practice the above-referenced ’797 Accused Gravitation-Controlled Motion Functionality, including, without limitation, the Windows Phone 8.1 and Windows 10 Mobile operating systems (“the ’797 Accused Operating Systems”), and/or software updates that include the ’797 Accused Gravitation-Controlled Motion Functionality.

124. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States smartphones that include the above-referenced ’797 Accused Gravitation-Controlled Motion Functionality (e.g., by being pre-loaded with one of the ’797 Accused Operating Systems) including, without limitation, the Nokia Lumia 930, Nokia Lumia 635, Nokia Lumia 530, Nokia Lumia 735, Nokia Lumia 830, Microsoft Lumia 435, Microsoft Lumia 640, Microsoft Lumia 640 XL, Microsoft Lumia 950, Microsoft Lumia 950 XL, Microsoft Lumia 550, and Microsoft Lumia 650 (“the ’797 Accused Gravitation-Controlled Motion Devices”).

125. Counterclaim Defendant has also actively induced, and continues to actively induce infringement of the ’797 patent in violation of 35 U.S.C. § 271(b). Upon information and belief, third party manufacturers (e.g. Acer, etc.) actually make, have made, use, sell and/or offer

to sell within the United States, and/or import into the United States, devices (e.g. the Acer Liquid M220) which embody, either literally or under the doctrine of equivalents, each element of at least claim 6 of the ’797 patent, by including one of the ’797 Accused Operating Systems, and therefore including the ’797 Accused Gravitation-Controlled Motion Functionality. Thereby, the third party manufacturers directly infringe at least claim 6 of the ’797 patent.

126. Counterclaim Defendant has had knowledge of the ’797 patent since at least February 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’797 Accused Gravitation-Controlled Motion Functionality directly infringes the ’797 patent, by being given actual notice of the patent on February 13, 2015, and through other communications, meetings, and presentations made by Philips relating to infringement of the ’797 patent. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce infringement as, with knowledge of the ’797 patent and knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’797 Accused Gravitation-Controlled Motion Functionality directly infringes the ’797 patent, Counterclaim Defendant has offered for sale, sold, and/or imported to others, including third party manufacturers, the ’797 Accused Operating Systems, which Counterclaim Defendant knows to include software code designed to practice the ’797 Accused Gravitation-Controlled Motion Functionality when executed. Counterclaim Defendant has further provided to those third party manufacturers instructions, user manuals, advertising, and/or marketing materials encouraging them and directing them how to incorporate the ’797 Accused Operating Systems

into the devices they make, have made, use, sell, and/or offer to sell within the United States, and/or import into the United States, and directly infringe the ’797 patent.

127. As one example, the Acer Liquid M220 comes pre-installed with the Windows Phone 8.1 operating system, and therefore comes pre-installed with software code which practices the ’797 Accused Gravitation-Controlled Motion Functionality when executed. Upon information and belief, Counterclaim Defendant provides third party manufacturer Acer with instructions and/or user manuals which facilitates and directs Acer how to incorporate the Windows Phone 8.1 operating system into the Liquid M220 devices Acer makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States, and thereby facilitates, directs, or encourages Acer to directly infringe at least claim 6 of the ’797 patent.

128. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’797 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’797 patent by third party manufacturers. As explained above, upon information and belief, third party manufacturers (e.g. Acer, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Liquid M220) which embody, either literally or under the doctrine of equivalents, each element of at least claim 6 of the ’797 patent, by including one of the ’797 Accused Operating Systems, and therefore including the ’797 Accused Gravitation-Controlled Motion Functionality. Thereby, these third party manufacturers directly infringe at least claim 6 of the ’797 patent. Further, as explained above, Counterclaim Defendant has had knowledge of the ’797 patent since at least February 13, 2015, and has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the

United States, devices which include the ’797 Accused Gravitation-Controlled Motion Functionality directly infringes the ’797 patent as of this date. Counterclaim Defendant has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the ’797 Accused Operating Systems, which include software code designed to practice the ’797 Accused Gravitation-Controlled Motion Functionality when executed. Third party manufacturers incorporate the ’797 Accused Operating Systems into their devices and make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States these devices to directly infringe the ’797 patent. Thus, the ’797 Accused Operating Systems constitute a material part of the ’797 patent.

129. Counterclaim Defendant has knowledge of the ’797 patent and knowledge that incorporation of the ’797 Accused Gravitation-Controlled Motion Functionality into devices necessarily directly infringes the ’797 patent. Further, the ’797 Accused Gravitation-Controlled Motion Functionality cannot be incorporated into a device without infringing the ’797 patent and has no use other than infringing the ’797 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’797 Accused Operating Systems are especially made and/or especially adapted for use in infringing the ’797 patent, at least because they include software code that was designed to practice the ’797 Accused Gravitation-Controlled Motion Functionality, which infringes the ’797 patent when incorporated in a third party manufacturer’s device. Moreover, the ’797 Accused Operating Systems are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’797 Accused Gravitation-Controlled Motion Functionality has no use apart from infringing the ’797 patent. Further, the included, above-referenced software code that practices the ’797 Accused Gravitation-Controlled Motion Functionality when

executed is distinct and separate from the rest of the software code in the ’797 Accused Operating Systems and embodies, when incorporated into a device, each element of at least claim 6 of the ’797 patent.

130. By reason of Counterclaim Defendant’s infringing activities, Philips has suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

131. Counterclaim Defendant has had actual notice and knowledge of the ’797 patent since at least February 13, 2015, as explained above, and upon information and belief, has known or should have known that its activities outlined in this Cause of Action infringe the ’797 patent directly. Further, Philips has met and communicated with Counterclaim Defendant on multiple occasions prior to the filing of this Counterclaim to explain Counterclaim Defendant’s infringement of the ’797 patent. Counterclaim Defendant has nonetheless continued to engage in and has escalated its infringing activities by developing, advertising, and selling additional infringing products since first becoming aware of its infringement of the ’797 patent (e.g., the Microsoft Lumia 950 was first sold by Counterclaim Defendant in November 2015 and is currently still being advertised for sale on Counterclaim Defendant’s website at https://www.microsoftstore.com/store/msusa/en_US/list/Microsoft-Lumia-950/categoryID.70449200?WT.mc_id=pointitsem_Microsoft+US_google_5+-+Microsoft+Store+DSA&s_kwcid=AL!4249!3!73896842693!b!!g!!_inurl%3Alumia%23inurl%3Aen_us&ef_id=VWSOWgAABK5iwVvc:20161202161714:s). Accordingly, Counterclaim Defendant’s misconduct is willful and egregious and beyond typical infringement, and this case is exceptional under 35 U.S.C. § 285.

**<u>Sixth Cause of Action: Infringement of U.S. Patent No. 6,522,695</u>**

132. Philips repeats and incorporates by reference each and every allegation of

paragraphs 1 through 34 of this Counterclaim, as though set forth here in its entirety.

133. Koninklijke Philips N.V. is the sole owner of the entire right, title, and interest in and to the ’695 patent, including the right to sue and recover for any and all infringements thereof.

134. Claim 14 of the ’695 patent is illustrative of the device claims of the ’695 patent and is directed to a receiver that has receiving means for receiving a composite signal from a transmission medium and demultiplexing means for deriving at least one signal portion from the composite signal and for deriving a first identification signal of a first type and of a second type from the composite signal. The receiver has decoding means for decoding at least one signal portion. If a control signal is of a first type, the decoding means decodes a signal portion into a portion of a digital information signal and supplies the portion of the digital information and if a control signal is of a second type, the decoding means supplies a signal portion as a portion of the digital information signal in a substantially unmodified form. The receiver also has means for generating the control signal for application to the decoding means including a control signal of the first type depending on the first identification signal of the first type.

135. Counterclaim Defendant has directly infringed and continues to directly infringe the ’695 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, without authority, smartphones, tablet computers, laptops, studios, hubs, and video game consoles that embody, either literally or under the doctrine of equivalents, each element of at least claim 14 of the ’695 patent.

136. For example, the Microsoft Surface Pro 4 is a tablet which runs the Windows 10 operating system, and the Microsoft Lumia 650 is a smartphone which runs the Windows 10

Mobile operating system. Both of these devices have audio decoding functionality similar to that summarized in the next paragraph ("the '695 Accused Audio Decoding Functionality") that meets every element of at least claim 14 of the '695 patent, either literally or under the doctrine of equivalents.

137. The Microsoft Surface Pro 4 runs the Windows 10 operating system (see, e.g., https://www.microsoft.com/en-us/surface/devices/surface-pro-4/tech-specs), and the Microsoft Lumia 650 runs the Windows 10 Mobile operating system (see, e.g., http://www.windowscentral.com/lumia-650). The Microsoft Surface Pro 4 and Microsoft Lumia 650 both have audio hardware and/or software that recognize and support FLAC (Free Lossless Audio Codec) and that can process audio signals encoded in the FLAC format (see, e.g., https://blogs.msdn.microsoft.com/iliast/2016/01/28/whats-new-in-audio-for-windows-10/, detailing that the Microsoft Windows Operating System version 10 or higher supports FLAC decoding). The audio hardware and/or software receiver of the Microsoft Surface Pro 4 and Microsoft Lumia 650 both receive a composite signal (e.g., a FLAC encoded audio signal) from a transmission medium (e.g., from memory or the Internet). The audio hardware and/or software demultiplexer of the Microsoft Surface Pro 4 and Microsoft Lumia 650 both demultiplex the composite signal and derive at least one signal portion from the composite signal (e.g., the demultiplexer demultiplexes the FLAC signal and derives an audio subframe) and derive a first identification signal of a first type and of a second type from the composite signal (e.g., the demultiplexer derives from the FLAC signal a subframe type, a first identification signal, that indicates either an LPC subframe, a first type, or a verbatim subframe, a second type; see, e.g., https://xiph.org/flac/format.html). The audio hardware and/or software decoder of the Microsoft Surface Pro 4 and Microsoft Lumia 650 both decode at least one signal portion (e.g., the decoder

decodes at least one audio subframe). If a control signal is of a first type (e.g., a control signal indicates LPC encoded audio), the decoder decodes a signal portion into a portion of a digital information signal and supplies the portion of the digital information (e.g., the subframe is LPC decoded into a portion of a digital information signal and is supplied) and if a control signal is of a second type (e.g., a control signal indicates verbatim encoded audio), the decoder supplies a signal portion as a portion of the digital information signal in a substantially unmodified form (e.g., the subframe is supplied substantially unmodified as a portion of the digital information signal). The audio hardware and/or software of the Microsoft Surface Pro 4 and Microsoft Lumia 650 both generate the control signal for application to the decoder including a control signal of the first type depending on the first identification signal of the first type (e.g., a control signal indicating LPC encoded audio, a first type, is generated for application to the decoder depending on the first identification signal indicating an LPC subframe, a first type).

138. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States operating systems and music applications that include software code designed to practice the above-referenced ’695 Accused Audio Decoding Functionality, including, without limitation, the Windows 10 and Windows 10 Mobile operating systems and the Microsoft Groove Music application (“the ’695 Accused Operating Systems”), and/or software updates that include the ’695 Accused Audio Decoding Functionality. *See, e.g.*, https://blogs.msdn.microsoft.com/iliast/2016/01/28/whats-new-in-audio-for-windows-10/.

139. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States smartphones, tablet computers, laptops, studios, hubs, and video game consoles that include the

above-referenced ’695 Accused Audio Decoding Functionality (e.g., by being pre-loaded with one of the ’695 Accused Operating Systems) including, without limitation, Microsoft Surface Hub, Microsoft Surface Pro 4, Microsoft Surface Book, Microsoft Surface Studio, Microsoft Lumia 950, Microsoft Lumia 950 XL, Microsoft Lumia 550, Microsoft Lumia 650, Xbox One, and Xbox One S (“the ’695 Accused Audio Decoding Devices”).

140. Counterclaim Defendant has also actively induced, and continues to actively induce infringement of the ’695 patent in violation of 35 U.S.C. § 271(b). Upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 14 of the ’695 patent, by including one of the ’695 Accused Operating Systems, and therefore including the ’695 Accused Audio Decoding Functionality. Thereby, the third party manufacturers directly infringe at least claim 14 of the ’695 patent.

141. Counterclaim Defendant has had knowledge of the ’695 patent since at least as of October 7, 2016, when it contacted Philips’ counsel regarding intervention, as explained above. Counterclaim Defendant has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’695 Accused Audio Decoding Functionality directly infringes the ’695 patent, at least as of October 7, 2016, when Counterclaim Defendant contacted Philips’ counsel regarding intervention after having previously reviewed Philips’ infringement allegations related to the ’695 patent regarding devices running the Windows operating systems. Counterclaim

Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce infringement as, with knowledge of the ’695 patent and knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’695 Accused Audio Decoding Functionality directly infringes the ’695 patent, Counterclaim Defendant has offered for sale, sold, and/or imported to others, including third party manufacturers, the ’695 Accused Operating Systems, which Counterclaim Defendant knows to include software code designed to practice the ’695 Accused Audio Decoding Functionality when executed. Counterclaim Defendant has further provided to those third party manufacturers instructions, user manuals, advertising, and/or marketing materials encouraging them and directing them how to incorporate the ’695 Accused Operating Systems into the devices they make, have made, use, sell, and/or offer to sell within the United States, and/or import into the United States, and directly infringe the ’695 patent.

142. For example, the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 each come pre-installed with the Windows 10 operating system, and therefore come pre-installed with software code which practices the ’695 Accused Audio Decoding Functionality when executed. Upon information and belief, the Counterclaim Defendant provides third party manufacturers Acer, ASUS, Double Power, Visual Land, and YiFang with instructions and/or user manuals which facilitate and direct these third party manufacturers how to incorporate the Windows 10 operating system into the above-listed devices that each company makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States. Thereby, Counterclaim Defendant facilitates, directs, or encourages Acer, ASUS, Double Power, Visual

Land, and YiFang to directly infringe at least claim 14 of the ’695 patent.

143. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’695 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’695 patent by third party manufacturers. As explained above, upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 14 of the ’695 patent, by including one of the ’695 Accused Operating Systems, and therefore including the ’695 Accused Audio Decoding Functionality. Thereby, these third party manufacturers directly infringe at least claim 14 of the ’695 patent. Further, as explained above, Counterclaim Defendant has had knowledge of the ’695 patent since at least as of October 7, 2016, and has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’695 Accused Audio Decoding Functionality directly infringes the ’695 patent as of this date. Counterclaim Defendant has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the ’695 Accused Operating Systems, which include software code designed to practice the ’695 Accused Audio Decoding Functionality when executed. Third party manufacturers incorporate the ’695 Accused Operating Systems into their devices and make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States these devices to directly infringe the ’695 patent. Thus, the ’695 Accused Operating Systems constitute a material part of the ’695 patent.

144. Counterclaim Defendant has knowledge of the ’695 patent and knowledge that incorporation of the ’695 Accused Audio Decoding Functionality into devices necessarily directly infringes the ’695 patent. Further, the ’695 Accused Audio Decoding Functionality cannot be incorporated into a device without infringing the ’695 patent and has no use other than infringing the ’695 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’695 Accused Operating Systems are especially made and/or especially adapted for use in infringing the ’695 patent, at least because they include software code that was designed to practice the ’695 Accused Audio Decoding Functionality, which infringes the ’695 patent when incorporated in a third party manufacturer’s device. Moreover, the ’695 Accused Operating Systems are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’695 Accused Audio Decoding Functionality has no use apart from infringing the ’695 patent. Further, the included, above-referenced software code that practices the ’695 Accused Audio Decoding Functionality when executed is distinct and separate from the rest of the software code in the ’695 Accused Operating Systems and embodies, when incorporated into a device, each element of at least claim 14 of the ’695 patent.

145. By reason of Counterclaim Defendant’s infringing activities, Philips has suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

146. Counterclaim Defendant has had actual notice and knowledge of the ’695 patent since at least October 7, 2016, as explained above, and upon information and belief, has known or should have known that its activities outlined in this Cause of Action infringe the ’695 patent directly. Further, Philips met and communicated with Counterclaim Defendant on multiple occasions prior to the filing of this action to explain Counterclaim Defendant’s infringement of

the ’695 patent. Counterclaim Defendant has nonetheless continued to engage in and has escalated its infringing activities by developing, advertising, and selling additional infringing products since first becoming aware of their infringement of the ’695 patent (e.g., the Microsoft Surface Pro 4 was first sold by Counterclaim Defendant in October 2015 and is currently still being advertised for sale on Counterclaim Defendant’s website at https://www.microsoftstore.com/store/msusa/en_US/pdp/Microsoft-Surface-Pro-4/productID.5072641000). Accordingly, Counterclaim Defendant’s misconduct is willful and egregious and beyond typical infringement, and this case is exceptional under 35 U.S.C. § 285.

**Seventh Cause of Action: Infringement of U.S. Patent No. 8,543,819**

147. Philips repeats and incorporates by reference each and every allegation of paragraphs 1 through 34 of this Counterclaim, as though set forth here in its entirety.

148. Koninklijke Philips N.V. is the sole owner of the entire right, title, and interest in and to the ’819 patent, including the right to sue and recover for any and all infringements thereof.

149. Claim 1 of the ’819 patent is illustrative of the method claims of the ’819 patent and is directed toward a method for determining whether protected content stored on a first communication device can be accessed by a second communication device. The method comprises performing a round trip time measurement between the first communication device and the second communication device. The round trip time measurement comprises transmitting a first signal to the second device at a first time, receiving a second signal from the second device at a second time, generating a third signal using a common secret, determining whether the second signal and the third signal are identical to verify that the second signal was generated using the common secret, generating the round trip time as a difference between the first time

and the second time, and checking whether the round trip time is within a predefined interval. Access to the protected content is allowed provided that the round trip time is within the predefined interval, the second signal and the third signal are identical, and the second device is authenticated. The first device authenticates the second device by receiving a certificate of the second device, verifying that the certificate of the second device identifies the second device as complying with a set of predefined compliance rules, and the first device securely shares the common secret with the second device according to a key management protocol after having authenticated the second device.

150. Claim 10 of the ’819 patent is illustrative of the device claims of the ’819 patent and is directed toward a first communication device configured for determining whether protected content stored on the first communication device is available for access by a second communication device. The first communication device comprises means for performing an authentication of the second communication device, which comprises: receiving a certificate of the second device and verifying that that the certificate of said second device identifies the second device as complying with a set of predefined compliance rules. The first communication device comprises means for securely sharing a common secret with the second communication device after the second communication device is authenticated. The first communication device comprises means for performing a round trip time measurement between the first communication device and the second communication device, which comprises: transmitting a first signal to the second device at time t1, receiving at time t2 a second signal from the second device, said second signal being generated using the common secret, and determining the round trip time measurement as a difference between time t1 and time t2. The first communication device comprises means for checking whether the measured round trip time is within a predefined

interval, means for generating a third signal using the common secret, means for checking whether the second signal and the third signal are identical, and means for allowing access to the protected content when the round trip time measurement is within the predefined interval and the second and third signals are identical.

151. Counterclaim Defendant has directly infringed and continues to directly infringe the ’819 patent in violation of 35 U.S.C. § 271(a) by using in the United States, without authority, devices, including, without limitation, video game consoles, to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the ’819 patent.

152. Counterclaim Defendant has directly infringed and continues to directly infringe the ’819 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, without authority, devices, including, without limitation, video game consoles, that embody, either literally or under the doctrine of equivalents, each element of at least claim 10 of the ’819 patent.

153. As one example, the Microsoft Xbox One S is a video game console which has content protection functionality similar to that summarized in the next two paragraphs (“the ’819 Accused HDCP Content Protection Functionality”) that meets every element of at least claim 10 of the ’819 patent, either literally or under the doctrine of equivalents, and the use of which results in the practice of every step of at least claim 1 of the ’819 patent, either literally or under the doctrine of equivalents, when operated by Counterclaim Defendant or other end users.

154. The Xbox One S has HDMI hardware and/or software that support the High-bandwidth Digital Content Protection (HDCP) Specification Mapping HDCP to HDMI Rev. 2.2 (see, e.g., https://www.digital-

cp.com/sites/default/files/specifications/HDCP%20on%20HDMI%20Specification%20Rev2_2_Final1.pdf) ("HDCP on HDMI Specification"). A first communication device (e.g., an HDCP transmitter such as the Xbox One S), has hardware and/or software that determine whether protected content that it stores can be accessed by a second communication device (e.g., an HDCP receiver such as a television). The Xbox One S performs a round trip time measurement between itself and the second communication device. The round trip time measurement comprises transmitting a first signal to the second device at a first time (e.g., transmitting the message LC_Init, which starts a locality check; see, e.g., HDCP on HDMI Specification, Figure 2.4), receiving a second signal from the second device at a second time (e.g., receiving the message LC_Send_L_prime, thereby receiving L'; see, e.g., HDCP on HDMI Specification, Figure 2.4), generating a third signal using a common secret (e.g., generating L using the common secret, the key $k_m$, from which $k_d$ is derived; see, e.g., HDCP on HDMI Specification, Figures 2.4 and 2.10), determining whether the second signal and the third signal are identical to verify that the second signal was generated using the common secret (e.g., determining that the received L' is equal to the generated L; see, e.g., HDCP on HDMI Specification, Figure 2.4), and generating the round trip time as a difference between the first time and the second time, checking whether the round trip time is within a predefined interval (e.g., checking if the round-trip time is within 20 ms; see, e.g., HDCP on HDMI Specification, Figure 2.4). Access to the protected content is allowed provided that the round trip time is within the predefined interval, the second signal and the third signal are identical, and the second device is authenticated. The Xbox One S authenticates the second device (e.g., the television) by receiving a certificate of the second device (e.g., the certificate received in the AKE_Send_Cert message; see, e.g., HDCP on HDMI Specification, Figure 2.1), verifying that the certificate of the second device identifies the

second device as complying with a set of predefined compliance rules (e.g., verifying the signature on the certificate; see, e.g., HDCP on HDMI Specification, Figure 2.1), and the Xbox One S securely shares the common secret with the second device according to a key management protocol after having authenticated the second device (e.g., $k_m$ is transmitted securely in the message AKE_No_Stored_km after the second device is authenticated; see, e.g., HDCP on HDMI Specification, Figure 2.1).

155. A first communication device (e.g., an HDCP transmitter such as the Xbox One S), is configured for determining whether protected content that it stores is available for access by a second communication device (e.g., an HDCP receiver such as a television). The Xbox One S has hardware and/or software that perform an authentication of the second communication device, which comprises: receiving a certificate of the second device (e.g., the certificate received in the AKE_Send_Cert message; see, e.g., HDCP on HDMI Specification, Figure 2.1) and verifying that that the certificate of said second device identifies the second device as complying with a set of predefined compliance rules (e.g., verifying the signature on the certificate; see, e.g., HDCP on HDMI Specification, Figure 2.1). The Xbox One S has hardware and/or software that securely share a common secret with the second communication device after the second communication device is authenticated (e.g., $k_m$ is transmitted securely in the message AKE_No_Stored_km after the second device is authenticated; see, e.g., HDCP on HDMI Specification, Figure 2.1). The Xbox One S has hardware and/or software that perform a round trip time measurement between the first communication device and the second communication device, which comprises: transmitting a first signal to the second device at time t1 (e.g., transmitting the message LC_Init, which starts a locality check; see, e.g., HDCP on HDMI Specification, Figure 2.4), receiving at time t2 a second signal from the second device,

said second signal being generated using the common secret (e.g., receiving the message LC_Send_L_prime, thereby receiving L' which is generated using the common secret, the key $k_m$, from which $k_d$ is derived; see, e.g., HDCP on HDMI Specification, Figures 2.4 and 2.10), and determining the round trip time measurement as a difference between time t1 and time t2 (e.g., checking if the round-trip time is within 20 ms; see, e.g., HDCP on HDMI Specification, Figure 2.4). The Xbox One S has hardware and/or software that check whether the measured round trip time is within a predefined interval (e.g., checking if the round-trip time is within 20 ms as explained above), hardware and/or software that generate a third signal using the common secret (e.g., generating L using the common secret, the key $k_m$, from which $k_d$ is derived; see, e.g., HDCP on HDMI Specification, Figures 2.4 and 2.10), hardware and/or software that check whether the second signal and the third signal are identical (e.g., checking that the received L' is equal to the generated L; see, e.g., HDCP on HDMI Specification, Figure 2.4), and hardware and/or software that allow access to the protected content when the round trip time measurement is within the predefined interval and the second and third signals are identical.

156. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States, devices that include the above-referenced '819 Accused HDCP Content Protection Functionality (e.g., by being pre-loaded with HDCP version 2.0 or higher on, for example, MHL, Miracast, HDMI, and/or DisplayPort) including, without limitation, the Xbox One S ("the '819 Accused HDCP Content Protection Devices").

157. Counterclaim Defendant has also actively induced, and continues to actively induce, its customers and other end users to infringe the '819 patent in violation of 35 U.S.C. § 271(b) in connection with their use of the '819 Accused HDCP Content Protection Devices.

Upon information and belief, Counterclaim Defendant's customers and other end users actually use the '819 Accused HDCP Content Protection Functionality in the '819 Accused HDCP Content Protection Devices to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the '819 patent and thereby directly infringe.

158. Counterclaim Defendant has had knowledge of the '819 patent since at least as of October 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that use of the '819 Accused HDCP Content Protection Functionality directly infringes the '819 patent at least as of October 13, 2015, upon viewing a presentation made by Philips. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce its customers and other end users to infringe the '819 patent via use of the '819 Accused HDCP Content Protection Devices. With knowledge of the '819 patent and knowledge that use of the '819 Accused HDCP Content Protection Functionality directly infringes the '819 patent, Counterclaim Defendant has: (i) offered for sale and/or sold to others, including customers and other end users, the '819 Accused HDCP Content Protection Devices that include the '819 Accused HDCP Content Protection Functionality (e.g., by being pre-loaded with HDCP version 2.0 or higher on, for example, MHL, Miracast, HDMI, and/or DisplayPort), and/or (ii) offered software updates for the '819 Accused HDCP Content Protection Devices that include the '819 Accused HDCP Content Protection Functionality, and has provided to others instructions, user manuals, advertising, and/or marketing materials encouraging them to use the '819 Accused HDCP Content Protection Functionality and directly infringe the '819 patent.

159. As one example, Counterclaim Defendant provides a troubleshooting guide (see, e.g., http://support.xbox.com/en-US/xbox-one/console/troubleshooting-4K-and-HDR-on-xbox-

one-s) which facilitates, directs, or encourages others, including customers and other end users, to use the ’819 Accused HDCP Content Protection Functionality and thereby directly infringe at least the method of claim 1 of the ’819 patent. For example, the troubleshooting guide includes at least the following description and instructions that direct a user to practice the ’819 Accused HDCP Content Protection Functionality: “If some content won't play, make sure your TV supports HDCP 2.2 and that it's turned on in your TV's settings.” Counterclaim Defendant has knowledge that the instructions in this troubleshooting guide encourage and facilitate the direct infringement of the ’819 patent by others, including customers and other end users, as Counterclaim Defendant has had knowledge of the ’819 patent and that use of the ’819 Accused HDCP Content Protection Functionality directly infringes the ’819 patent since at least as of October 13, 2015, as explained above.

160. Counterclaim Defendant has also directly infringed and continues to directly infringe the ’819 patent in violation of 35 U.S.C. § 271(a) by using in the United States, without authority, smartphones, tablet computers, laptops, studios, hubs, video game consoles, content protection technology protocols, and operating systems to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the ’819 patent.

161. Counterclaim Defendant has also directly infringed and continues to directly infringe the ’819 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, without authority, smartphones, tablet computers, laptops, studios, hubs, and video game consoles that embody, either literally or under the doctrine of equivalents, each element of at least claim 10 of the ’819 patent.

162. For example, the Microsoft Surface Pro 4 is a tablet which runs the Microsoft

Windows 10 Operating System (see, e.g., https://www.microsoft.com/en-us/surface/devices/surface-pro-4/tech-specs), and the Microsoft Lumia 650 is a smartphone which runs the Windows 10 Mobile operating system (see, e.g., http://www.windowscentral.com/lumia-650). Both of these devices have content protection functionality similar to that summarized in the next two paragraphs ("the '819 Accused DRM Content Protection Functionality") that meets every element of at least claim 10 of the '819 patent, either literally or under the doctrine of equivalents, and the use of which results in the practice of every step of at least claim 1 of the '819 patent, either literally or under the doctrine of equivalents, when operated by Counterclaim Defendant or other end users.

163. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both have hardware and/or software that support the Microsoft PlayReady and/or Windows Media Digital Rights Management (WMDRM): Network Devices Protocol (see, e.g., https://winprotocoldoc.blob.core.windows.net/productionwindowsarchives/MS-DRMND/[MS-DRMND]-151016.pdf) ("MS-DRMND Specification"). Products incorporating Microsoft PlayReady must implement all Windows Media Digital Rights Management: Network Devices Protocol messages (see, e.g., Section 13.6 of http://download.microsoft.com/download/1/F/5/1F5E4331-FC3A-4B96-B3DF-36E48D905A0E/Compliance_Rules_For_PlayReady_Products_10_November_2016.docx). A first communication device (e.g., a transmitter such as the Microsoft Surface Pro 4 or Microsoft Lumia 650), has hardware and/or software that determine whether protected content that it stores can be accessed by a second communication device (e.g., a receiver such as a television). The first communication device (e.g., the Microsoft Surface Pro 4 or Microsoft Lumia 650) performs a round trip time measurement between itself and the second communication device. The round

trip time measurement comprises transmitting a first signal to the second device at a first time (e.g., transmitting the message Proximity Challenge, which starts a proximity detection check; see, e.g., MS-DRMND Specification, Figure 5 and Sections 2.2.1.3.2, 3.1.1.4, 3.2.5.2, and 3.3.5.2), receiving a second signal from the second device at a second time (e.g., receiving the message Proximity Response, thereby receiving {Nonce}$K_{CE}$; see, e.g., MS-DRMND Specification, Figure 5 and Sections 2.2.1.3.3, 3.1.1.4, 3.2.5.2, and 3.3.5.2), generating a third signal using a common secret (e.g., generating {Nonce}$K_{CE}$ using the common secret, {Seed}PReceiver, from which the content encryption key is derived; see, e.g., MS-DRMND Specification, Figure 5 and Sections 2.2.1.2, 3.1.1.3, 3.1.1.4, 3.2.5.2, and 3.3.5.2), determining whether the second signal and the third signal are identical to verify that the second signal was generated using the common secret (e.g., determining that the received {Nonce}$K_{CE}$ is equal to the generated {Nonce}$K_{CE}$; see, e.g., MS-DRMND Specification, Figure 5 and Sections 3.1.1.4, 3.2.5.2, and 3.3.5.2), generating the round trip time as a difference between the first time and the second time, and checking whether the round trip time is within a predefined interval (e.g., checking if the round-trip time is within 7 ms; see, e.g., MS-DRMND Specification, Figure 5 and Section 3.1.1.4, 3.2.5.2, and 3.3.5.2). Access to the protected content is allowed provided that the round trip time is within the predefined interval, the second signal and the third signal are identical, and the second device is authenticated. The first communication device (e.g., the Microsoft Surface Pro 4 or Microsoft Lumia 650) authenticates the second device (e.g., the television) by receiving a certificate of the second device (e.g., the certificate received in the Registration Request message; see, e.g., MS-DRMND Specification, Figure 4 and Section 2.2.1.1, 3.1.1.3, 3.2.5.1, and 3.3.5.1), verifying that the certificate of the second device identifies the second device as complying with a set of predefined compliance rules (e.g., verifying the

signature on the certificate; see, e.g., MS-DRMND Specification, Figure 4 and Section 3.1.1.3, 3.2.5.1, and 3.3.5.1), and the first communication device (e.g., the Microsoft Surface Pro 4 or Microsoft Lumia 650) securely shares the common secret with the second device according to a key management protocol after having authenticated the second device (e.g., {Seed}PReceiver is transmitted securely in the message Registration Response after the second device is authenticated; see, e.g., MS-DRMND Specification, Figure 4 and Section 2.2.1.2, 3.1.1.3, 3.2.5.1, and 3.3.5.1).

164. A first communication device (e.g., a transmitter such as the Microsoft Surface Pro 4 or Microsoft Lumia 650), is configured for determining whether protected content that it stores is available for access by a second communication device (e.g., a receiver such as a television). The first communication device (e.g., the Microsoft Surface Pro 4 or Microsoft Lumia 650) has hardware and/or software that perform an authentication of the second communication device, which comprises: receiving a certificate of the second device (e.g., the certificate received in the Registration Request message; see, e.g., MS-DRMND Specification, Figure 4 and Section 2.2.1.1, 3.1.1.3, 3.2.5.1, and 3.3.5.1) and verifying that that the certificate of said second device identifies the second device as complying with a set of predefined compliance rules (e.g., verifying the signature on the certificate; see, e.g., MS-DRMND Specification, Figure 4 and Section 3.1.1.3, 3.2.5.1, and 3.3.5.1). The first communication device (e.g., the Microsoft Surface Pro 4 or Microsoft Lumia 650) has hardware and/or software that securely share a common secret with the second communication device after the second communication device is authenticated (e.g., {Seed}PReceiver is transmitted securely in the message Registration Response after the second device is authenticated; see, e.g., MS-DRMND Specification, Figure 4 and Section 2.2.1.2, 3.1.1.3, 3.2.5.1, and 3.3.5.1). The first communication device (e.g., the

Microsoft Surface Pro 4 or Microsoft Lumia 650) has hardware and/or software that perform a round trip time measurement between the first communication device and the second communication device, which comprises: transmitting a first signal to the second device at time t1 (e.g., transmitting the message Proximity Challenge, which starts a proximity detection check; see, e.g., MS-DRMND Specification, Figure 5 and Sections 2.2.1.3.2, 3.1.1.4, 3.2.5.2, and 3.3.5.2), receiving at time t2 a second signal from the second device, said second signal being generated using the common secret (e.g., receiving the message Proximity Response, thereby receiving {Nonce}$K_{CE}$; see, e.g., MS-DRMND Specification, Figure 5 and Sections 2.2.1.3.3, 3.1.1.4, 3.2.5.2, and 3.3.5.2), and determining the round trip time measurement as a difference between time t1 and time t2 (e.g., checking if the round-trip time is within 7 ms; see, e.g., MS-DRMND Specification, Figure 5 and Section 3.1.1.4, 3.2.5.2, and 3.3.5.2). The first communication device (e.g., the Microsoft Surface Pro 4 or Microsoft Lumia 650) has hardware and/or software that check whether the measured round trip time is within a predefined interval (e.g., checking if the round-trip time is within 7 ms as explained above), hardware and/or software that generate a third signal using the common secret (e.g., generating {Nonce}$K_{CE}$ using the common secret, {Seed}PReceiver, from which the content encryption key is derived; see, e.g., MS-DRMND Specification, Figure 5 and Sections 2.2.1.2, 3.1.1.3, 3.1.1.4, 3.2.5.2, and 3.3.5.2), hardware and/or software that check whether the second signal and the third signal are identical (e.g., checking that the received {Nonce}$K_{CE}$ is equal to the generated {Nonce}$K_{CE}$; see, e.g., MS-DRMND Specification, Figure 5 and Sections 3.1.1.4, 3.2.5.2, and 3.3.5.2), and hardware and/or software that allow access to the protected content when the round trip time measurement is within the predefined interval and the second and third signals are identical.

165. Upon information and belief, Counterclaim Defendant makes, has made, uses,

sells and/or offers to sell within the United States and/or imports into the United States content protection technologies and operating systems that include software code designed to practice the above-referenced ’819 Accused DRM Content Protection Functionality, including, without limitation, the Windows 7, Windows 8, Windows 8.1, Windows 10, Windows RT 8.0, Windows RT 8.1, Windows Phone 8.1, and Windows 10 Mobile operating systems (“the ’819 Accused DRM Operating Systems”), and the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, and/or software updates that include the ’819 Accused DRM Content Protection Functionality. *See*, *e.g.*, https://www.microsoft.com/PlayReady/features/EndPoints.aspx; http://download.microsoft.com/download/B/D/4/BD42A75B-5B3E-49C0-B70D-DD49FA9592F9/DevelopingMicrosoftPlayReadyClients_March2015.pdf.

166. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States, smartphones, tablet computers, laptops, studios, hubs, and video game consoles that include the above-referenced ’819 Accused DRM Content Protection Functionality (e.g., by being pre-loaded with one of the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies) including, without limitation, the Microsoft Surface, Microsoft Surface Pro, Microsoft Surface 2, Microsoft Surface Pro 2, Microsoft Surface Pro 3, Microsoft Surface 3, Microsoft Surface Hub, Microsoft Surface Pro 4, Microsoft Surface Book, Microsoft Surface Studio, Nokia Lumia 930, Nokia Lumia 635, Nokia Lumia 530, Nokia Lumia 735, Nokia Lumia 830, Microsoft Lumia 435, Microsoft Lumia 640, Microsoft Lumia 640 XL, Microsoft Lumia 950, Microsoft Lumia 950 XL, Microsoft Lumia 550, and Microsoft Lumia 650 (“the ’819 Accused DRM Content

Protection Devices").

167. Counterclaim Defendant has also actively induced, and continues to actively induce infringement of the '819 patent in violation of 35 U.S.C. § 271(b). Upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang, SiliconDust, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, the SiliconDust HDHomeRun Prime, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 10 of the '819 patent, by including one of the '819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, and therefore including the '819 Accused DRM Content Protection Functionality. Thereby, the third party manufacturers directly infringe at least claim 10 of the '819 patent.

168. Counterclaim Defendant has had knowledge of the '819 patent since at least as of October 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the '819 Accused DRM Content Protection Functionality directly infringes the '819 patent, at least as of October 13, 2015, upon viewing a presentation made by Philips. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce infringement as, with knowledge of the '819 patent and knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the '819 Accused

DRM Content Protection Functionality directly infringes the ’819 patent, Counterclaim Defendant has offered for sale, sold, and/or imported to others, including third party manufacturers, the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, which Counterclaim Defendant knows to include software code designed to practice the ’819 Accused DRM Content Protection Functionality when executed. Counterclaim Defendant has further provided to those third party manufacturers instructions, user manuals, advertising, and/or marketing materials encouraging them and directing them how to incorporate the ’819 Accused DRM Operating Systems into the devices they make, have made, use, sell, and/or offer to sell within the United States, and/or import into the United States, and directly infringe the ’819 patent.

169. For example, the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 each come pre-installed with the Windows 10 operating system, and therefore come pre-installed with software code which practices the ’819 Accused DRM Content Protection Functionality when executed. As another example, the SiliconDust HDHomeRun Prime comes pre-installed with Windows Media Digital Rights Management (see, e.g., https://www.silicondust.com/wordpress/wp-content/uploads/2016/11/PRIME_USL_Nov16.pdf), and therefore comes pre-installed with software code which practices the ’819 Accused DRM Content Protection Functionality when executed. Upon information and belief, Counterclaim Defendant provides third party manufacturers Acer, ASUS, Double Power, Visual Land, and YiFang with instructions and/or user manuals which facilitate and direct these third party manufacturers how to incorporate the Windows 10 operating system into the above-listed

devices that each company makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States. Thereby, Counterclaim Defendant facilitates, directs, or encourages Acer, ASUS, Double Power, Visual Land, and YiFang to directly infringe at least claim 10 of the ’819 patent. Upon information and belief, Counterclaim Defendant provides third party manufacturer SiliconDust with instructions and/or user manuals which facilitates and directs SiliconDust how to incorporate Windows Media Digital Rights Management into the SiliconDust HDHomeRun Prime devices SiliconDust makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States, and thereby facilitates, directs, or encourages SiliconDust to directly infringe at least claim 10 of the ’819 patent.

170. Counterclaim Defendant has also actively induced, and continues to actively induce, its customers and other end users to infringe the ’819 patent in violation of 35 U.S.C. § 271(b) in connection with their use of the ’819 Accused DRM Content Protection Devices and/or third party manufacturers’ devices which include the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies. Upon information and belief, Counterclaim Defendant’s customers and other end users actually use the ’819 Accused DRM Content Protection Functionality in the ’819 Accused DRM Content Protection Devices and/or third party manufacturers’ devices which include the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the ’819 patent and thereby directly infringe.

171. Counterclaim Defendant has had knowledge of the ’819 patent since at least as of

October 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that use of the ’819 Accused DRM Content Protection Functionality directly infringes the ’819 patent, at least as of October 13, 2015, upon viewing a presentation made by Philips. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce its customers and other end users to infringe the ’819 patent via use of the ’819 Accused DRM Content Protection Devices and/or third party manufacturer devices (e.g. Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, SiliconDust HDHomeRun Prime, etc.). With knowledge of the ’819 patent and knowledge that use of the ’819 Accused DRM Content Protection Functionality directly infringes the ’819 patent, Counterclaim Defendant has: (i) offered for sale and/or sold to others, including customers and other end users, the ’819 Accused DRM Content Protection Devices that include the ’819 Accused DRM Content Protection Functionality (e.g., by being pre-loaded with one of the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies), (ii) offered for sale, sold and/or imported to third party manufacturers for incorporation into their devices, the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, which include software code designed to practice the ’819 Accused DRM Content Protection Functionality when executed, and/or (iii) has offered software updates for the ’819 Accused DRM Content Protection Devices and third party devices that include the ’819 Accused DRM Content Protection Functionality, and has provided to others instructions, user manuals, advertising, and/or marketing materials encouraging them to use the ’819 Accused DRM Content

Protection Functionality and directly infringe the ’819 patent.

172. As one example, Counterclaim Defendant provides a Frequently Asked Questions Page (see, e.g., https://www.microsoft.com/PlayReady/licensing/faq/) which facilitates, directs, or encourages others, including customers and other end users, to use the ’819 Accused DRM Content Protection Functionality and thereby directly infringe at least the method of claim 1 of the ’819 patent. Counterclaim Defendant has knowledge that the instructions in this Frequently Asked Questions Page encourage and facilitate the direct infringement of the ’819 patent by others, including customers and other end users, as Counterclaim Defendant has had knowledge of the ’819 patent and that use of the ’819 Accused DRM Content Protection Functionality directly infringes the ’819 patent since at least as of October 13, 2015, as explained above.

173. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’819 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’819 patent by third party manufacturers. As explained above, upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang, SiliconDust, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, SiliconDust HDHomeRun Prime, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 10 of the ’819 patent, by including one of the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, and therefore including the ’819 Accused DRM Content Protection Functionality. Thereby, these third party manufacturers directly infringe at least claim 10 of the ’819 patent. Further, as

explained above, Counterclaim Defendant has had knowledge of the ’819 patent since at least as of October 13, 2015, and has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’819 Accused DRM Content Protection Functionality directly infringes the ’819 patent as of this date. Counterclaim Defendant has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, which include software code designed to practice the ’819 Accused DRM Content Protection Functionality when executed. Thus, the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies constitute a material part of the ’819 patent.

174. Counterclaim Defendant has knowledge of the ’819 patent and knowledge that incorporation of the ’819 Accused DRM Content Protection Functionality into devices necessarily directly infringes the ’819 patent. Further, the ’819 Accused DRM Content Protection Functionality cannot be incorporated into a device without infringing the ’819 patent and has no use other than infringing the ’819 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies are especially made and/or especially adapted for use in infringing the ’819 patent, at least because they include software code that was designed to practice the ’819 Accused DRM Content Protection Functionality, which infringes the ’819 patent when incorporated in a third party manufacturer’s device. Moreover, the ’819 Accused

DRM Operating Systems and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’819 Accused DRM Content Protection Functionality has no use apart from infringing the ’819 patent. Further, the included, above-referenced software code that practices the ’819 Accused DRM Content Protection Functionality when executed is distinct and separate from the rest of the software code in the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, and embodies, when incorporated into a device, each element of at least claim 10 of the ’819 patent.

175. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’819 patent in violation of 35 U.S.C. § 271(c) in connection with the direct infringement of the ’819 patent by customers and end users of devices that run one of the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies. As explained above, Counterclaim Defendant’s customers and other end users actually use the ’819 Accused DRM Content Protection Functionality in the ’819 Accused DRM Content Protection Devices, and/or third party manufacturers’ devices which include the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 1 of the ’819 patent and thereby directly infringe. Further, as explained above, Counterclaim Defendant has had knowledge of the ’819 patent since at least as of October 13, 2015, and has also had knowledge that use of the ’819 Accused DRM

Content Protection Functionality necessarily directly infringes the ’819 patent as of this date. Counterclaim Defendant has incorporated into the ’819 Accused DRM Content Protection Devices, and has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, which include software code designed to practice the ’819 Accused DRM Content Protection Functionality when executed, and/or has offered software updates for the ’819 Accused DRM Content Protection Devices and third party devices that include software code designed to practice the ’819 Accused DRM Content Protection Functionality when executed. End users of the ’819 Accused DRM Content Protection Devices and third party manufacturer devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, SiliconDust HDHomeRun Prime, etc.), use the included ’819 Accused DRM Content Protection Functionality of the ’819 Accused DRM Operating Systems, and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, to directly infringe the ’819 patent while using these devices. Thus, the ’819 Accused DRM Operating Systems, and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, constitute a material part of the ’819 patent.

176. Counterclaim Defendant has knowledge of the ’819 patent and knowledge that use of the ’819 Accused DRM Content Protection Functionality necessarily directly infringes the ’819 patent. Further, the ’819 Accused DRM Content Protection Functionality cannot be practiced without infringing the ’819 patent and has no use other than infringing the ’819 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’819

Accused DRM Operating Systems, and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, and software updates for these operating systems and content protection technologies are especially made and/or especially adapted for use in infringing the ’819 patent, at least because they include software code that was designed to practice the ’819 Accused DRM Content Protection Functionality when executed, which infringes the ’819 patent. Moreover, the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, and software updates for these operating systems and content protection technologies, are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’819 Accused DRM Content Protection Functionality has no use apart from infringing the ’819 patent. Further, the included, above-referenced software code that practices the ’819 Accused DRM Content Protection Functionality is distinct and separate from the rest of the software code in the ’819 Accused DRM Operating Systems and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies and, when executed, only practices, and can only be used to practice, each step of at least the method of claim 1 of the ’819 patent.

177. By reason of Counterclaim Defendant’s infringing activities, Plaintiffs have suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

178. Counterclaim Defendant has had actual notice and knowledge of the ’819 patent since at least as of October 13, 2015, as explained above, and upon information and belief, has known or should have known that its activities outlined in this Cause of Action infringe the ’819 patent directly or indirectly. Further, Philips met and communicated with Counterclaim

Defendant on multiple occasions prior to the filing of this Counterclaim to explain Counterclaim Defendant's infringement of the '819 patent. Counterclaim Defendant has nonetheless continued to engage in and has escalated its infringing activities by developing, advertising, and selling additional infringing products since first becoming aware of their infringement of the '819 patent (e.g., the Microsoft Surface Pro 4 was first sold by Counterclaim Defendant in October 2015 and is currently still being advertised for sale on Counterclaim Defendant's website at https://www.microsoftstore.com/store/msusa/en_US/pdp/Microsoft-Surface-Pro-4/productID.5072641000). Accordingly, Counterclaim Defendant's misconduct is willful and egregious and beyond typical infringement, and this case is exceptional under 35 U.S.C. § 285.

**Eighth Cause of Action: Infringement of U.S. Patent No. 9,436,809**

179. Philips repeats and incorporates by reference each and every allegation of paragraphs 1 through 34 of this Counterclaim, as though set forth here in its entirety.

180. Koninklijke Philips N.V. is the sole owner of the entire right, title, and interest in and to the '809 patent, including the right to sue and recover for any and all infringements thereof.

181. Claim 1 of the '809 patent is illustrative of the device claims of the '809 patent and is directed toward a first device for controlling delivery of protected content to a second device. The first device comprises a memory and a processor. The processor is arranged to receive a certificate of the second device, the certificate providing information regarding the second device, determine whether the second device is compliant with a set of compliance rules utilizing the information provided in the certificate, provide a first signal to the second device depending when the second device is determined to be compliant with the set of compliance

rules, receive a second signal from the second device after providing the first signal, determine whether the second signal is derived from a secret known by the first device, determine whether a time difference between providing the first signal and receiving the second signal is less than a predetermined time, and allow the protected content to be provided to the second device when at least the second signal is determined to be derived from the secret and the time difference is less than the predetermined time.

182. Claim 34 of the ’809 patent is illustrative of the method claims of the ’809 patent and is directed toward a method of a first device controlling delivery of protected content to a second device. The method comprises receiving a certificate of the second device, the certificate providing information regarding the second device, determining whether the second device is compliant with a set of compliance rules utilizing the information provided in the certificate, providing a first signal to the second device depending when the second device is determined to be compliant with the set of compliance rules, receiving a second signal from the second device after providing the first signal, determining whether the second signal is derived from a secret known by the first device, determining whether a time difference between providing the first signal and receiving the second signal is less than a predetermined time, and allowing the protected content to be provided to the second device when at least the second signal is determined to be derived from the secret and the time difference is less than the predetermined time.

183. Counterclaim Defendant has directly infringed and continues to directly infringe the ’809 patent in violation of 35 U.S.C. § 271(a) by using in the United States, without authority, devices, including, without limitation, video game consoles, to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 34 of the ’809

patent.

184. Counterclaim Defendant has directly infringed and continues to directly infringe the ’809 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, without authority, devices, including, without limitation, video game consoles, that embody, either literally or under the doctrine of equivalents, each element of at least claim 1 of the ’809 patent.

185. As one example, the Xbox One S is a video game console which has content protection functionality similar to that summarized in the next paragraph (“the ’809 Accused HDCP Content Protection Functionality”) that meets every element of at least claim 1 of the ’809 patent, either literally or under the doctrine of equivalents, and the use of which results in the practice of every step of at least claim 34 of the ’809 patent, either literally or under the doctrine of equivalents, when operated by Counterclaim Defendant or other end users.

186. The Xbox One S has HDMI hardware and/or software that support the High-bandwidth Digital Content Protection (HDCP) Specification Mapping HDCP to HDMI Rev. 2.2 (see, e.g., https://www.digital-cp.com/sites/default/files/specifications/HDCP%20on%20HDMI%20Specification%20Rev2_2_Final1.pdf) (“HDCP on HDMI Specification”). A first device (e.g., an HDCP transmitter such as the Xbox One S) for controlling delivery of protected content to a second device (e.g., an HDCP receiver such as a television). The first device comprises a memory and a processor. The processor is arranged to receive a certificate of the second device (e.g., the certificate received in the AKE_Send_Cert message; see, e.g., HDCP on HDMI Specification, Figure 2.1), the certificate providing information regarding the second device (e.g., the signature with which the certificate is signed; see, e.g., HDCP on HDMI Specification, Figure 2.1), determine whether the

second device is compliant with a set of compliance rules utilizing the information provided in the certificate (e.g., verifying the signature on the certificate; see, e.g., HDCP on HDMI Specification, Figure 2.1), provide a first signal to the second device (e.g., transmitting the message LC_Init, which starts a locality check; see, e.g., HDCP on HDMI Specification, Figure 2.4) depending when the second device is determined to be compliant with the set of compliance rules, receive a second signal from the second device after providing the first signal (e.g., receiving the message LC_Send_L_prime, thereby receiving L'; see, e.g., HDCP on HDMI Specification, Figure 2.4), determine whether the second signal is derived from a secret known by the first device (e.g., determining whether L', received as part of the message LC_Send_L_prime, is generated using the common secret, the key $k_m$, from which $k_d$ is derived by verifying that L' is equal to the generated L; see, e.g., HDCP on HDMI Specification, Figures 2.4 and 2.10), determine whether a time difference between providing the first signal and receiving the second signal is less than a predetermined time (e.g., checking if the time between sending the LC_Init message and receiving the LC_Send_L_prime message is within 20 ms; see, e.g., HDCP on HDMI Specification, Figure 2.4), and allow the protected content to be provided to the second device when at least the second signal is determined to be derived from the secret and the time difference is less than the predetermined time.

187. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States, devices that include the above-referenced '809 Accused HDCP Content Protection Functionality (e.g., by being pre-loaded with HDCP version 2.0 or higher on, for example, MHL, Miracast, HDMI, and/or DisplayPort) including, without limitation, the Xbox One S ("the '809 Accused HDCP Content Protection Devices").

188. Counterclaim Defendant has also actively induced, and continues to actively induce, its customers and other end users to infringe the ’809 patent in violation of 35 U.S.C. § 271(b) in connection with their use of the ’809 Accused HDCP Content Protection Devices. Upon information and belief, Counterclaim Defendant’s customers and other end users actually use the ’809 Accused HDCP Content Protection Functionality in the ’809 Accused HDCP Content Protection Devices to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 34 of the ’809 patent and thereby directly infringe.

189. Counterclaim Defendant has had knowledge of the ’809 patent since at least November 7, 2016, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that use of the ’809 Accused HDCP Content Protection Functionality directly infringes the ’809 patent by being given actual notice of the patent on November 7, 2016, upon receiving Plaintiffs’ Initial Identification of Proposed Intervenor Microsoft’s Accused Products. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce its customers and other end users to infringe the ’809 patent via use of the ’809 Accused HDCP Content Protection Devices. With knowledge of the ’809 patent and knowledge that use of the ’809 Accused HDCP Content Protection Functionality directly infringes the ’809 patent, Counterclaim Defendant has: (i) offered for sale and/or sold to others, including customers and other end users, the ’809 Accused HDCP Content Protection Devices that include the ’809 Accused HDCP Content Protection Functionality (e.g., by being pre-loaded with HDCP version 2.0 or higher on, for example, MHL, Miracast, HDMI, and/or DisplayPort), and/or (ii) offered software updates for the ’809 Accused HDCP Content Protection Devices that include the ’809 Accused HDCP Content Protection Functionality, and has provided to others instructions, user

manuals, advertising, and/or marketing materials encouraging them to use the ’809 Accused HDCP Content Protection Functionality and directly infringe the ’809 patent.

190. As one example, Counterclaim Defendant provides a troubleshooting guide (see, e.g., http://support.xbox.com/en-US/xbox-one/console/troubleshooting-4K-and-HDR-on-xbox-one-s) which facilitates, directs, or encourages others, including customers and other end users, to use the ’809 Accused HDCP Content Protection Functionality and thereby directly infringe at least the method of claim 34 of the ’809 patent. For example, the troubleshooting guide includes at least the following description and instructions that direct a user to practice the ’809 Accused HDCP Content Protection Functionality: “If some content won't play, make sure your TV supports HDCP 2.2 and that it's turned on in your TV's settings.” Counterclaim Defendant has knowledge that the instructions in this troubleshooting guide encourage and facilitate the direct infringement of the ’809 patent by others, including customers and other end users, as Counterclaim Defendant has had knowledge of the ’809 patent and that use of the ’809 Accused HDCP Content Protection Functionality directly infringes the ’809 patent since at least November 7, 2016, as explained above.

191. Counterclaim Defendant has also directly infringed and continues to directly infringe the ’809 patent in violation of 35 U.S.C. § 271(a) by using in the United States, without authority, smartphones, tablet computers, laptops, studios, hubs, video game consoles, content protection technology protocols, and operating systems to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 34 of the ’809 patent.

192. Counterclaim Defendant has also directly infringed and continues to directly infringe the ’809 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States,

without authority, smartphones, tablet computers, laptops, studios, hubs, and video game consoles that embody, either literally or under the doctrine of equivalents, each element of at least claim 1 of the ’809 patent.

193. As one example, the Microsoft Surface Pro 4 is a tablet which runs the Microsoft Windows 10 Operating System (see, e.g., https://www.microsoft.com/en-us/surface/devices/surface-pro-4/tech-specs), and the Microsoft Lumia 650 is a smartphone which runs the Windows 10 Mobile operating system (see, e.g., http://www.windowscentral.com/lumia-650). Both of these devices have content protection functionality similar to that summarized in the next paragraph (“the ’809 Accused DRM Content Protection Functionality”) that meets every element of at least claim 1 of the ’809 patent, either literally or under the doctrine of equivalents, and the use of which results in the practice of every step of at least claim 34 of the ’809 patent, either literally or under the doctrine of equivalents, when operated by Counterclaim Defendant or other end users.

194. The Microsoft Surface Pro 4 and Microsoft Lumia 650 both have hardware and/or software that support the Microsoft PlayReady and/or Windows Media Digital Rights Management (WMDRM): Network Devices Protocol (see, e.g., https://winprotocoldoc.blob.core.windows.net/productionwindowsarchives/MS-DRMND/[MS-DRMND]-151016.pdf) (“MS-DRMND Specification”). Products incorporating Microsoft PlayReady must implement all Windows Media Digital Rights Management: Network Devices Protocol messages (see, e.g., Section 13.6 of http://download.microsoft.com/download/1/F/5/1F5E4331-FC3A-4B96-B3DF-36E48D905A0E/Compliance_Rules_For_PlayReady_Products_10_November_2016.docx). A first device (e.g., a transmitter such as the Microsoft Surface Pro 4 or Microsoft Lumia 650) for

controlling delivery of protected content to a second device (e.g., a receiver such as a television). The first device comprises a memory and a processor. The processor is arranged to receive a certificate of the second device (e.g., the certificate received in the Registration Request message; see, e.g., MS-DRMND Specification, Figure 4 and Section 2.2.1.1, 3.1.1.3, 3.2.5.1, and 3.3.5.1), the certificate providing information regarding the second device (e.g., the signature with which the certificate is signed; see, e.g., MS-DRMND Specification, Figure 4 and Section 2.2.1.1, 3.1.1.3, 3.2.5.1, and 3.3.5.1), determine whether the second device is compliant with a set of compliance rules utilizing the information provided in the certificate (e.g., verifying the signature on the certificate; see, e.g., MS-DRMND Specification, Figure 4 and Section 3.1.1.3, 3.2.5.1, and 3.3.5.1), provide a first signal to the second device (e.g., transmitting the message Proximity Challenge, which starts a proximity detection check; see, e.g., MS-DRMND Specification, Figure 5 and Sections 2.2.1.3.2, 3.1.1.4, 3.2.5.2, and 3.3.5.2) depending when the second device is determined to be compliant with the set of compliance rules, receive a second signal from the second device after providing the first signal (e.g., receiving the message Proximity Response, thereby receiving {Nonce}$K_{CE}$; see, e.g., MS-DRMND Specification, Figure 5 and Sections 2.2.1.3.3, 3.1.1.4, 3.2.5.2, and 3.3.5.2), determine whether the second signal is derived from a secret known by the first device (e.g., determining whether {Nonce}$K_{CE}$, received as part of the message Proximity Response, is generated using the common secret, {Seed}PReceiver, from which the content encryption key is derived by verifying that the received {Nonce}$K_{CE}$ is equal to the generated {Nonce}$K_{CE}$; see, e.g., MS-DRMND Specification, Figure 5 and Sections 3.1.1.4, 3.2.5.2, and 3.3.5.2), determine whether a time difference between providing the first signal and receiving the second signal is less than a predetermined time (e.g., checking if the time between sending the Proximity Challenge message

and receiving the Proximity Response message is within 7 ms; see, e.g., MS-DRMND Specification, Figure 5 and Section 3.1.1.4, 3.2.5.2, and 3.3.5.2), and allow the protected content to be provided to the second device when at least the second signal is determined to be derived from the secret and the time difference is less than the predetermined time.

195. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States content protection technologies and operating systems that include software code designed to practice the above-referenced ’809 Accused DRM Content Protection Functionality, including, without limitation, the Windows 7, Windows 8, Windows 8.1, Windows 10, Windows RT 8.0, Windows RT 8.1, Windows Phone 8.1, and Windows 10 Mobile operating systems (“the ’809 Accused DRM Operating Systems”), and the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, and/or software updates that include the ’809 Accused DRM Content Protection Functionality. *See*, *e.g.*, https://www.microsoft.com/PlayReady/features/EndPoints.aspx; http://download.microsoft.com/download/B/D/4/BD42A75B-5B3E-49C0-B70D-DD49FA9592F9/DevelopingMicrosoftPlayReadyClients_March2015.pdf.

196. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States, smartphones, tablet computers, laptops, studios, hubs, and video game consoles that include the above-referenced ’809 Accused DRM Content Protection Functionality (e.g., by being pre-loaded with one of the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies) including, without limitation, the Microsoft Surface, Microsoft Surface Pro, Microsoft Surface 2,

Microsoft Surface Pro 2, Microsoft Surface Pro 3, Microsoft Surface 3, Microsoft Surface Hub, Microsoft Surface Pro 4, Microsoft Surface Book, Microsoft Surface Studio, Nokia Lumia 930, Nokia Lumia 635, Nokia Lumia 530, Nokia Lumia 735, Nokia Lumia 830, Microsoft Lumia 435, Microsoft Lumia 640, Microsoft Lumia 640 XL, Microsoft Lumia 950, Microsoft Lumia 950 XL, Microsoft Lumia 550, and Microsoft Lumia 650 ("the '809 Accused DRM Content Protection Devices").

197. Counterclaim Defendant has also actively induced, and continues to actively induce infringement of the '809 patent in violation of 35 U.S.C. § 271(b). Upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang, SiliconDust, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, SiliconDust HDHomeRun Prime, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 1 of the '809 patent, by including one of the '809 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, and therefore including the '809 Accused DRM Content Protection Functionality. Thereby, the third party manufacturers directly infringe at least claim 1 of the '809 patent.

198. Counterclaim Defendant has had knowledge of the '809 patent since at least November 7, 2016, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the '809 Accused DRM Content Protection Functionality directly infringes the '809

patent, by being given actual notice of the patent on November 7, 2016, upon receiving Plaintiffs' Initial Identification of Proposed Intervenor Microsoft's Accused Products. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce infringement as, with knowledge of the '809 patent and knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the '809 Accused DRM Content Protection Functionality directly infringes the '809 patent, Counterclaim Defendant has offered for sale, sold, and/or imported to others, including third party manufacturers, the '809 Accused DRM Operating Systems and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, which Counterclaim Defendant knows to include software code designed to practice the '809 Accused DRM Content Protection Functionality when executed. Counterclaim Defendant has further provided to those third party manufacturers instructions, user manuals, advertising, and/or marketing materials encouraging them and directing them how to incorporate the '809 Accused DRM Operating Systems, and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, into the devices they make, have made, use, sell, and/or offer to sell within the United States, and/or import into the United States, and directly infringe the '809 patent.

199. For example, the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 each come pre-installed with the Windows 10 operating system, and therefore come pre-installed with software code which practices the '809 Accused DRM Content Protection Functionality when executed. As another example, the SiliconDust HDHomeRun Prime comes pre-installed with

Windows Media Digital Rights Management (see, e.g., https://www.silicondust.com/wordpress/wp-content/uploads/2016/11/PRIME_USL_Nov16.pdf), and therefore comes pre-installed with software code which practices the ’809 Accused DRM Content Protection Functionality when executed. Upon information and belief, Counterclaim Defendant provides third party manufacturers Acer, ASUS, Double Power, Visual Land, and YiFang with instructions and/or user manuals which facilitate and direct these third party manufacturers how to incorporate the Windows 10 operating system into the above-listed devices that each company makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States. Thereby, Counterclaim Defendant facilitates, directs, or encourages Acer, ASUS, Double Power, Visual Land, and YiFang to directly infringe at least claim 1 of the ’809 patent. Upon information and belief, Counterclaim Defendant provides third party manufacturer SiliconDust with instructions and/or user manuals which facilitates and directs SiliconDust how to incorporate Windows Media Digital Rights Management into the SiliconDust HDHomeRun Prime devices SiliconDust makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States, and thereby facilitates, directs, or encourages SiliconDust to directly infringe at least claim 1 of the ’809 patent.

200. Counterclaim Defendant has also actively induced, and continues to actively induce, its customers and other end users to infringe the ’809 patent in violation of 35 U.S.C. § 271(b) in connection with their use of the ’809 Accused DRM Content Protection Devices and/or third party manufacturers’ devices which include the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies. Upon information and belief, Counterclaim Defendant’s

customers and other end users actually use the ’809 Accused DRM Content Protection Functionality in the ’809 Accused DRM Content Protection Devices and/or third party manufacturers’ devices which include the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 34 of the ’809 patent and thereby directly infringe.

201. Counterclaim Defendant has had knowledge of the ’809 patent since at least November 7, 2016, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that use of the ’809 Accused DRM Content Protection Functionality directly infringes the ’809 patent by being given actual notice of the patent on November 7, 2016, upon receiving Plaintiffs’ Initial Identification of Proposed Intervenor Microsoft’s Accused Products. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce its customers and other end users to infringe the ’809 patent via use of the ’809 Accused DRM Content Protection Devices and/or third party manufacturer devices (e.g. Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, SiliconDust HDHomeRun Prime, etc.). With knowledge of the ’809 patent and knowledge that use of the ’809 Accused DRM Content Protection Functionality directly infringes the ’809 patent, Counterclaim Defendant has: (i) offered for sale and/or sold to others, including customers and other end users, the ’809 Accused DRM Content Protection Devices that include the ’809 Accused DRM Content Protection Functionality (e.g., by being pre-loaded with one of the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection

technologies), (ii) offered for sale, sold and/or imported to third party manufacturers for incorporation into their devices, the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, which include software code designed to practice the ’809 Accused DRM Content Protection Functionality when executed, and/or (iii) has offered software updates for the ’809 Accused DRM Content Protection Devices and third party devices that include the ’809 Accused DRM Content Protection Functionality, and has provided to others instructions, user manuals, advertising, and/or marketing materials encouraging them to use the ’809 Accused DRM Content Protection Functionality and directly infringe the ’809 patent.

202. As one example, Counterclaim Defendant provides a Frequently Asked Questions Page (see, e.g., https://www.microsoft.com/PlayReady/licensing/faq/) which facilitates, directs, or encourages others, including customers and other end users, to use the ’809 Accused DRM Content Protection Functionality and thereby directly infringe at least the method of claim 34 of the ’809 patent. Counterclaim Defendant has knowledge that the instructions in this Frequently Asked Questions Page encourage and facilitate the direct infringement of the ’809 patent by others, including customers and other end users, as Counterclaim Defendant has had knowledge of the ’809 patent and that use of the ’809 Accused DRM Content Protection Functionality directly infringes the ’809 patent since at least November 7, 2016, as explained above.

203. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’809 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’809 patent by third party manufacturers. As explained above, upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang SiliconDust, etc.) actually make, have made, use, sell and/or offer to sell within the

United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, SiliconDust HDHomeRun Prime, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claim 1 of the ’809 patent, by including one of the ’809 Accused DRM Operating Systems, and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, and therefore including the ’809 Accused DRM Content Protection Functionality. Thereby, these third party manufacturers directly infringe at least claim 1 of the ’809 patent. Further, as explained above, Counterclaim Defendant has had knowledge of the ’809 patent since at least November 7, 2016 and has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’809 Accused DRM Content Protection Functionality directly infringes the ’809 patent as of this date. Counterclaim Defendant has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the ’809 Accused DRM Operating Systems, and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, which include software code designed to practice the ’809 Accused DRM Content Protection Functionality when executed. Thus, the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies constitute a material part of the ’809 patent.

204. Counterclaim Defendant has knowledge of the ’809 patent and knowledge that incorporation of the ’809 Accused DRM Content Protection Functionality into devices necessarily directly infringes the ’809 patent. Further, the ’809 Accused DRM Content

Protection Functionality cannot be incorporated into a device without infringing the ’809 patent and has no use other than infringing the ’809 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies are especially made and/or especially adapted for use in infringing the ’809 patent, at least because they include software code that was designed to practice the ’809 Accused DRM Content Protection Functionality, which infringes the ’809 patent when incorporated into a third party manufacturer’s device. Moreover, the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’809 Accused DRM Content Protection Functionality has no use apart from infringing the ’809 patent. Further, the included, above-referenced software code that practices the ’809 Accused DRM Content Protection Functionality when executed is distinct and separate from the rest of the software code in the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, and embodies, when incorporated into a device, each element of at least claim 1 of the ’809 patent.

205. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’809 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’809 patent by customers and end users of devices that run one of the ’809 Accused DRM Operating Systems and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies. As explained above,

Counterclaim Defendant's customers and other end users actually use the '809 Accused DRM Content Protection Functionality in the '809 Accused DRM Content Protection Devices and/or third party manufacturers' devices which include the '809 Accused DRM Operating Systems, and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, to practice, either literally or under the doctrine of equivalents, each step of at least the method of claim 34 of the '809 patent and thereby directly infringe. Further, as explained above, Counterclaim Defendant has had knowledge of the '809 patent since at least November 7, 2016, and has also had knowledge that use of the '809 Accused DRM Content Protection Functionality necessarily directly infringes the '809 patent as of this date. Counterclaim Defendant has incorporated into the '809 Accused DRM Content Protection Devices, and has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the '809 Accused DRM Operating Systems, and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, which include software code designed to practice the '809 Accused DRM Content Protection Functionality when executed, and/or has offered software updates for the '809 Accused DRM Content Protection Devices and third party devices that include software code designed to practice the '809 Accused DRM Content Protection Functionality when executed. End users of the '809 Accused DRM Content Protection Devices and third party manufacturer devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, SiliconDust HDHomeRun Prime, etc.), use the included '809 Accused DRM Content Protection Functionality of the '809 Accused DRM Operating Systems, and/or the Microsoft PlayReady or Microsoft Windows Media Digital Rights Management content protection technologies, to

directly infringe the ’809 patent while using these devices. Thus, the ’809 Accused DRM Operating Systems, and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, constitute a material part of the ’809 patent.

206. Counterclaim Defendant has knowledge of the ’809 patent and knowledge that use of the ’809 Accused DRM Content Protection Functionality necessarily directly infringes the ’809 patent. Further, the ’809 Accused DRM Content Protection Functionality cannot be practiced without infringing the ’809 patent and has no use other than infringing the ’809 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’809 Accused DRM Operating Systems, and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, and software updates for these operating systems and content protection technologies are especially made and/or especially adapted for use in infringing the ’809 patent, at least because they include software code that was designed to practice the ’809 Accused DRM Content Protection Functionality when executed, which infringes the ’809 patent. Moreover, the ’809 Accused DRM Operating Systems, and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, and software updates for these operating systems and content protection technologies are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’809 Accused DRM Content Protection Functionality has no use apart from infringing the ’809 patent. Further, the included, above-referenced software code that practices the ’809 Accused DRM Content Protection Functionality is distinct and separate from the rest of the software code in the ’809 Accused DRM Operating Systems, and/or the Microsoft PlayReady and Microsoft Windows Media Digital Rights Management content protection technologies, and,

when executed, only practices, and can only be used to practice, each step of at least the method of claim 34 of the ’809 patent.

207. By reason of Counterclaim Defendant’s infringing activities, Plaintiffs have suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

208. Counterclaim Defendant has had actual notice and knowledge of the ’809 patent since at least November 7, 2016, as explained above, and upon information and belief, has known or should have known that its activities outlined in this Cause of Action infringe the ’809 patent directly or indirectly. Further, Philips met and communicated with Counterclaim Defendant on multiple occasions prior to the filing of this Counterclaim to explain Counterclaim Defendant’s infringement of the ’809 patent. Counterclaim Defendant has nonetheless continued to engage in and has escalated its infringing activities by developing, advertising, and selling additional infringing products since first becoming aware of their infringement of the ’809 patent (e.g., the Microsoft Surface Pro 4 was first sold by Counterclaim Defendant in October 2015 and is currently still being advertised for sale on Counterclaim Defendant’s website at https://www.microsoftstore.com/store/msusa/en_US/pdp/Microsoft-Surface-Pro-4/productID.5072641000). Accordingly, Counterclaim Defendant’s misconduct is willful and egregious and beyond typical infringement, and this case is exceptional under 35 U.S.C. § 285.

## Ninth Cause of Action: Infringement of U.S. Patent No. RE 43,564

209. Philips repeats and incorporates by reference each and every allegation of paragraphs 1 through 34 of this Counterclaim, as though set forth here in its entirety.

210. Koninklijke Philips N.V. is the sole owner of the entire right, title, and interest in and to the ’564 patent, including the right to sue and recover for any and all infringements

thereof.

211. Claim 1 of the '564 patent is illustrative of the device claims of the '564 patent and is directed toward a handheld communication device having a wireless modem for receiving data, a display that has a substantially small size suitable for the handheld communication device, a data processing system connected to the modem and to the display for processing the received data and for rendering an image corresponding to the data received, and a touch screen for enabling a user to interact with the device. The system operates to enable the user to select, through a touch location on the touch screen, a portion of the image when it is displayed at a first scale. The selected portion is rendered on the display at a second scale larger than the first scale thereby facilitating a selection of a feature. The selected portion when rendered at the second scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch location.

212. Claim 7 of the '564 patent depends from claim 1 and is directed toward the device of claim 1 wherein the data processing system is further operative to cause a window containing the selected portion displayed at the second scale to scroll across the image such that successive new selected portions of the image are displayed at the second scale.

213. Counterclaim Defendant has directly infringed and continues to directly infringe the '564 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, without authority, smartphones, tablet computers, and laptops that embody, either literally or under the doctrine of equivalents, each element of at least claims 1 and 7 of the '564 patent.

214. For example, the Microsoft Surface Pro 4 is a tablet which runs the Windows 10 operating system, and the Microsoft Lumia 650 is a smartphone which runs the Windows 10

Mobile operating system. Both of these devices have zoom functionality similar to that summarized in the next two paragraphs ("the '564 Accused Zoom Functionality") that meets every element of at least claims 1 and 7 of the '564 patent, either literally or under the doctrine of equivalents.

215. The Microsoft Surface Pro 4 runs the Windows 10 operating system (see, e.g., https://www.microsoft.com/en-us/surface/devices/surface-pro-4/tech-specs), and the Microsoft Lumia 650 runs the Windows 10 Mobile operating system (see, e.g., http://www.windowscentral.com/lumia-650). The Microsoft Surface Pro 4 and Microsoft Lumia 650 are both handheld communication devices having a wireless modem for receiving data, a display that has a substantially small size suitable for the handheld communication device, a processor (e.g., the 6th Generation Intel Core m3, i5, or i7, and the Qualcomm Snapdragon 212, respectively) connected to the modem and to the display for processing the received data and for rendering an image corresponding to the data received (e.g., a rendered image of received website content), and a touch screen for enabling a user to interact with the device. The systems operate to enable the user to select, through a touch location on the touch screen, a portion of the image when it is displayed at a first scale (e.g., the user selects, using a magnifier tool, a portion of the website when it is displayed at a first scale; see, e.g., https://support.microsoft.com/en-us/help/11542/windows-use-magnifier, detailing that the Microsoft Windows Operating System version 7 or higher supports the magnifier tool). The selected portion is rendered on the display at a second scale larger than the first scale thereby facilitating a selection of a feature (e.g., the selected portion of the image is magnified to facilitate selection of a feature such as a link to a webpage). The selected portion when rendered at the second scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch location (e.g., the magnified

portion is substantially centered around the user's touch location).

216. Further, the data processing systems are further operative to cause a window containing the selected portion displayed at the second scale to scroll across the image such that successive new selected portions of the image are displayed at the second scale (e.g., a magnification window containing the selected portion that is magnified scrolls across the image such that successive new selected portions of the image are magnified).

217. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States operating systems that include software code designed to practice the above-referenced '564 Accused Zoom Functionality, including, without limitation, the Windows 7, Windows 8, Windows 8.1, Windows 10, Windows RT 8.0, Windows RT 8.1, Windows Phone 8.1, and Windows 10 Mobile operating systems ("the '564 Accused Operating Systems"), and/or software updates that include the '564 Accused Zoom Functionality. *See, e.g.*, https://support.microsoft.com/en-us/help/11542/windows-use-magnifier.

218. Upon information and belief, Counterclaim Defendant makes, has made, uses, sells and/or offers to sell within the United States and/or imports into the United States smartphones, tablet computers, and laptops that include the above-referenced '564 Accused Zoom Functionality (e.g., by being pre-loaded with one of the '564 Accused Operating Systems) including, without limitation, the Microsoft Surface, Microsoft Surface Pro, Microsoft Surface 2, Microsoft Surface Pro 2, Microsoft Surface Pro 3, Microsoft Surface 3, Microsoft Surface Pro 4, Microsoft Surface Book, Nokia Lumia 930, Nokia Lumia 635, Nokia Lumia 530, Nokia Lumia 735, Nokia Lumia 830, Microsoft Lumia 435, Microsoft Lumia 640, Microsoft Lumia 640 XL, Microsoft Lumia 950, Microsoft Lumia 950 XL, Microsoft Lumia 550, and Microsoft Lumia

650 (“the ’564 Accused Zoom Devices”).

219. Counterclaim Defendant has also actively induced, and continues to actively induce infringement of the ’564 patent in violation of 35 U.S.C. § 271(b). Upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang, etc.) actually make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claims 1 and 7 of the ’564 patent, by including one of the ’564 Accused Operating Systems, and therefore including the ’564 Accused Zoom Functionality. Thereby, the third party manufacturers directly infringe at least claims 1 and 7 of the ’564 patent.

220. Counterclaim Defendant has had knowledge of the ’564 patent since at least February 13, 2015, when it was provided with actual notice of the patent, as explained above. Counterclaim Defendant has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’564 Accused Zoom Functionality directly infringes the ’564 patent, by being given actual notice of the patent on February 13, 2015, and through other communications, meetings, and presentations made by Philips relating to infringement of the ’564 patent. Counterclaim Defendant, both prior and subsequent to the foregoing events, has acted and continued to act with the specific intent to induce infringement as, with knowledge of the ’564 patent and knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’564 Accused Zoom Functionality directly infringes the ’564 patent, Counterclaim Defendant has offered for sale,

sold, and/or imported to others, including third party manufacturers, the ’564 Accused Operating Systems, which Counterclaim Defendant knows to include software code designed to practice the ’564 Accused Zoom Functionality when executed. Counterclaim Defendant has further provided to those third party manufacturers instructions, user manuals, advertising, and/or marketing materials encouraging them and directing them how to incorporate the ’564 Accused Operating Systems into the devices they make, have made, use, sell, and/or offer to sell within the United States, and/or import into the United States, and directly infringe the ’564 patent.

221. For example, the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, and YiFang Nextbook Flexx 9 each come pre-installed with the Windows 10 operating system, and therefore come pre-installed with software code which practices the ’564 Accused Zoom Functionality when executed. Upon information and belief, Counterclaim Defendant provides third party manufacturers Acer, ASUS, Double Power, Visual Land, and YiFang with instructions and/or user manuals which facilitate and direct these third party manufacturers how to incorporate the Windows 10 operating system into the above-listed devices that each company makes, has made, uses, sells, and/or offers to sell within the United States, and/or imports into the United States. Thereby, Counterclaim Defendant facilitates, directs, or encourages Acer, ASUS, Double Power, Visual Land, and YiFang to directly infringe at least claims 1 and 7 of the ’564 patent.

222. Counterclaim Defendant has also contributorily infringed, and continues to contributorily infringe, the ’564 patent in violation of 35 U.S.C. § 271(c), in connection with the direct infringement of the ’564 patent by third party manufacturers. As explained above, upon information and belief, third party manufacturers (e.g. Acer, ASUS, Double Power, Visual Land, YiFang etc.) actually make, have made, use, sell and/or offer to sell within the United States,

and/or import into the United States, devices (e.g. the Acer Aspire Switch 10E, ASUS Transformer Book T100HA, Double Power DPW10A-BT, Visual Land Premier 9, YiFang Nextbook Flexx 9, etc.) which embody, either literally or under the doctrine of equivalents, each element of at least claims 1 and 7 of the ’564 patent, by including one of the ’564 Accused Operating Systems, and therefore including the ’564 Accused Zoom Functionality. Thereby, these third party manufacturers directly infringe at least claims 1 and 7 of the ’564 patent. Further, as explained above, Counterclaim Defendant has had knowledge of the ’564 patent since at least February 13, 2015, and has also had knowledge that making, having made, using, selling and/or offering to sell within the United States, and/or importing into the United States, devices which include the ’564 Accused Zoom Functionality directly infringes the ’564 patent as of this date. Counterclaim Defendant has offered for sale, sold, and/or imported to third party manufacturers for incorporation into their devices, the ’564 Accused Operating Systems, which include software code designed to practice the ’564 Accused Zoom Functionality when executed. Third party manufacturers incorporate the ’564 Accused Operating Systems into their devices and make, have made, use, sell and/or offer to sell within the United States, and/or import into the United States these devices to directly infringe the ’564 patent. Thus, the ’564 Accused Operating Systems constitute a material part of the ’564 patent.

223. Counterclaim Defendant has knowledge of the ’564 patent and knowledge that incorporation of the ’564 Accused Zoom Functionality into devices necessarily directly infringes the ’564 patent. Further, the ’564 Accused Zoom Functionality cannot be incorporated into a device without infringing the ’564 patent and has no use other than infringing the ’564 patent. Upon information and belief, for the reasons above, Counterclaim Defendant knows that the ’564 Accused Operating Systems are especially made and/or especially adapted for use in infringing

the ’564 patent, at least because they include software code that was designed to practice the ’564 Accused Zoom Functionality, which infringes the ’564 patent when incorporated in a third party manufacturer’s device. Moreover, the ’564 Accused Operating Systems are not staple articles of commerce suitable for substantial non-infringing use, at least because the included, above-referenced software code that practices the ’564 Accused Zoom Functionality has no use apart from infringing the ’564 patent. Further, the included, above-referenced software code that practices the ’564 Accused Zoom Functionality when executed is distinct and separate from the rest of the software code in the ’564 Accused Operating Systems and embodies, when incorporated into a device, each element of at least claims 1 and 7 of the ’564 patent.

224. By reason of Counterclaim Defendant’s infringing activities, Philips has suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

225. Counterclaim Defendant has had actual notice and knowledge of the ’564 patent since at least February 13, 2015, as explained above, and upon information and belief, has known or should have known that its activities outlined in this Cause of Action infringe the ’564 patent directly. Further, Philips met and communicated with Counterclaim Defendant on multiple occasions prior to the filing of this Counterclaim to explain Counterclaim Defendant’s infringement of the ’564 patent. Counterclaim Defendant has nonetheless continued to engage in and has escalated its infringing activities by developing, advertising, and selling additional infringing products since first becoming aware of its infringement of the ’564 patent (e.g., the Microsoft Surface Pro 4 was first sold by Counterclaim Defendant in October 2015 and is currently still being advertised for sale on Counterclaim Defendant’s website at https://www.microsoftstore.com/store/msusa/en_US/pdp/Microsoft-Surface-Pro-4/productID.5072641000). Accordingly, Counterclaim Defendant’s misconduct is willful and

egregious and beyond typical infringement, and this case is exceptional under 35 U.S.C. § 285.

**Prayer for Relief**

WHEREFORE, Philips respectfully requests the Court to enter judgment as follows:

A. That Counterclaim Defendant has directly infringed, indirectly infringed, induced others to infringe, and contributed to the infringement of the patents-in-suit;

B. That Counterclaim Defendant be ordered to pay damages adequate to compensate Philips for Counterclaim Defendant's infringement of the patents-in-suit, but in no event less than a reasonable royalty, together with prejudgment and post-judgment interest thereon;

C. That Counterclaim Defendant be ordered to account for post-verdict infringement and pay no less than a reasonable royalty, together with interest, thereon;

D. That Counterclaim Defendant's infringement is deliberate and willful and that Counterclaim Defendant be ordered to pay treble damages under 35 U.S.C. § 284;

E. That this is an exceptional case under 35 U.S.C. § 285 and that Philips be awarded its reasonable attorneys' fees, costs, and expenses; and

F. That Philips be granted such other and additional relief as the Court deems just and proper.

**Jury Demand**

Philips hereby demand a jury trial as to all issues so triable.

Dated: December 9, 2016

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*
Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Attorneys for Plaintiffs*

Of Counsel:

Michael P. Sandonato
John D. Carlin
Jonathan M. Sharret
Daniel A. Apgar
Robert S. Pickens
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200
msandonato@fchs.com
jcarlin@fchs.com
jsharret@fchs.com
dapgar@fchs.com
rpickens@fchs.com